**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Renee Armstrong SANDERS,
Defendant–Appellant.**

**No. 90–6026.**

United States Court of Appeals,
Tenth Circuit.

March 19, 1991.

Susan L. Foreman, Asst. Federal Public Defender (Michael G. Katz, Federal Public Defender with her on the brief), Denver, Colo., for defendant-appellant Johnny Lee Sanders.

Robert E. Mydans, Asst. U.S. Atty. (Timothy D. Leonard, U.S. Atty., and D. Blair Watson, Asst. U.S. Atty., were on the brief), Oklahoma City, Okla., for plaintiff-appellee U.S.

Before McKAY and MOORE, Circuit Judges, and SAFFELS, District Judge [*].

SAFFELS, District Judge.

Renee Armstrong Sanders, defendant-appellant herein, was convicted in the United States District Court for the Western District of Oklahoma of violating 18 U.S.C. §§ 1962(c), 1962(d), 1956(a)(1)(B)(i) and 21 U.S.C. § 846. Defendant-appellant Sanders raises five contentions of error in this appeal. First, Sanders contends that the trial court erred in denying her motions for severance and mistrial based upon admission of evidence about items found in the residence which she shared with her husband, Johnny Lee Sanders, for purposes of impeaching his testimony in their joint trial. Second, Sanders contends that the evidence of concealment or disguise in her joint purchase, with her husband, of two cars was insufficient to support her convictions for money laundering. Third, Sanders contends that the evidence was insufficient to support her convictions on racketeering charges because it failed to establish her knowing association with an enterprise or her participation in its affairs through racketeering acts. Fourth, Sanders contends that the evidence was insufficient to support her conviction for conspiracy to distribute heroin in that it failed to establish agreement. Finally, Sanders contends that the trial court misapplied the

sentencing guidelines in determining the quantity of drugs to be used in arriving at her base offense level. For the reasons stated below, we conclude that defendant's convictions under the money laundering statute should be reversed and that, accordingly, her convictions on racketeering charges must also be reversed. On all other issues, however, we affirm the district court.

### I.

Renee Armstrong Sanders (hereinafter referred to as "defendant," "Sanders," "Mrs. Sanders" or "Renee Sanders") was charged along with ten other individuals in a 60-count superseding Indictment filed on June 8, 1988. Of the 60 counts, only six named Renee Sanders as a defendant. Specifically, she was charged with one count of racketeering in violation of 18 U.S.C. § 1962(c) (hereinafter referred to as "RICO"), one count of conspiracy to commit RICO in violation of 18 U.S.C. § 1962(d), one count of conspiracy to distribute heroin in violation of 21 U.S.C. § 846, three counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and one count of use of a telephone to facilitate the conspiracy to distribute heroin in violation of 21 U.S.C. § 843(b). On September 21, 1989, the trial court denied Renee Sanders' motion to sever her trial from that of her husband and codefendant, Johnny Lee Sanders. Trial to the jury commenced on October 18, 1989 and concluded on November 9, 1989. On November 13, 1989, a jury found Sanders guilty as charged except it acquitted her of the money laundering charge set out in Count 15 and the phone facilitation charge set forth in Count 31. Renee Sanders was sentenced to terms of 13 years imprisonment on each count, the terms to run concurrently.

### II.

Defendant contends that the trial court erred in denying her motions for sev-

---

[*] The Honorable Dale E. Saffels, Senior United States District Judge for the District of Kansas, sitting by designation.

erance and mistrial. A decision regarding severance is within the sound discretion of the trial court and will not be disturbed on appeal unless there is. an affirmative showing of abuse of discretion. *United States v. Cardall*, 885 F.2d 656, 667 (10th Cir. 1989) (citing *United States v. Hack*, 782 F.2d 862, 870 (10th Cir.), *cert. denied, Owens v. United States*, 476 U.S. 1184, 106 S.Ct. 2921, 91 L.Ed.2d 549 (1986)). To establish an abuse of discretion, the defendant must show that actual prejudice resulted from the denial. *Hack*, 782 F.2d at 870. The denial of a motion for mistrial is also reviewed under an abuse of discretion standard. *United States v. Peveto*, 881 F.2d 844, 859 (10th Cir.), *cert. denied, Hines v. United States*, — U.S. —, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989) (citations omitted).

Specifically, defendant challenges as erroneous the trial court's denial of her renewed motion for severance and mistrial. (R. Vol. XIX, 2296). Defendant's renewed motion was prompted by the admission, during the government's rebuttal case, of testimony from a police detective, William T. Terhune. Detective Terhune's testimony was allowed into evidence to impeach Mr. Sanders' testimony in his own defense that after January 1983 he was no longer involved with drugs. (R. Vol. XIX, 2258, 2298). Detective Terhune testified that he had participated in a search of the Sanderses' Kansas City residence on June 27, 1989, 18 months after the offenses for which the Sanderses were indicted. Detective Terhune testified that the search disclosed lactose, a kitchen scale, some unidentified white powder, a quarter teaspoon measuring spoon, Ziploc-type bags, 18 packages of water balloons, and a 10–channel scanner, all of which he described as drug paraphernalia. These items were admitted into evidence over defense counsel's objections. (R. Vol. XIX, 2300–12). The trial court instructed the jury to consider the evidence in assessing Mr. Sanders' credibility but not in its determination of the case against Mrs. Sanders. (R. Vol. XIX, 2312–14).

Besides her objection to the admission of evidence regarding the search of the Sanderses' Kansas City residence, Renee Sanders argues that the trial court erred in denying severance for two additional reasons. First, she contends that the fact that she was married to her codefendant, Johnny Lee Sanders, resulted in guilt by association. Second, she contends that the "great disparity in the quantity of evidence presented against the two Sanderses resulted in unfair 'spillover' to Mrs. Sanders." Defendant–Appellant's Brief, at 12.

As an initial matter, the court concludes that defendant Renee Sanders was properly joined for trial with her husband, defendant Johnny Lee Sanders. Fed. R.Crim.P. 8(b); *see United States v. McLain*, 823 F.2d 1457, 1467 (11th Cir. 1987) (test for proper joinder is a common thread between defendants); *United States v. Pack*, 773 F.2d 261, 266 (10th Cir.1985) (as a general rule in conspiracy cases, "persons indicted together on conspiracy charges should be tried together") (citations omitted). In determining whether to sever trials of properly joined defendants, "the trial court must balance two competing interests by weighing the prejudice to a particular defendant caused by the joinder against considerations of economy and expedition in judicial administration." *Pack*, 773 F.2d at 267 (citing *United States v. Walton*, 552 F.2d 1354 (10th Cir.), *cert. denied*, 431 U.S. 959, 97 S.Ct. 2685, 53 L.Ed.2d 277 (1977)). A defendant wishing to obtain severance must show actual prejudice at trial will result from failure to sever the trials. *Hack*, 782 F.2d at 870.

Having examined defendant's arguments, we do not find that defendant has demonstrated that the trial court abused its discretion in denying her motions for severance and mistrial. First, the trial judge gave the jury a lengthy limiting instruction following the admission of the rebuttal evidence regarding the search of the Sanderses' Kansas City residence.[1] Second, with

---

**1.** The trial court instructed the jury upon the close of Detective Terhune's testimony as follows:

Ladies and Gentlemen of the Jury, it's been a while ago but I hope you recall that at the outset of this case in preliminary instructions

regard to defendant's argument that the jury improperly inferred her guilt by association because she was married to Johnny Lee Sanders, the trial court gave approximately 20 other requested limiting instructions concerning the jury's use of evidence as to either defendant or Mr. Sanders. As this court has stated previously, a cautionary instruction ordinarily is sufficient to cure alleged prejudice to the defendant. *Peveto*, 881 F.2d at 859. It should be noted that defendant did not request any special instruction relating to her marital status with her codefendant. Finally, with regard to defendant's argument that evidence as to her husband's activities unfairly spilled over into the jury's consideration of her case, the court concludes that defendant has not shown actual prejudice or that the trial court abused its discretion in denying severance. *See Hack*, 782 F.2d at 871 (a mere disparity in quantities of evidence against defendants in a conspiracy case, without more, does not justify severance). Thus, defendant's request for a new trial will be denied.

### III.

■ In her second issue on appeal, defendant Sanders argues that her money laundering convictions based upon two car purchases should be overturned because the evidence was insufficient to establish that these purchases were designed to conceal or disguise drug proceeds. As stated

in *United States v. Hooks*, a single test applies in reviewing the sufficiency of the evidence in criminal cases: "[t]he evidence—both direct and circumstantial, together with reasonable inferences to be drawn therefrom—is sufficient if, when taken in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." 780 F.2d 1526, 1531 (10th Cir.), *cert. denied*, 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986). Further, the evidence presented to support the conviction "must be 'substantial; that is, it must do more than raise a mere suspicion of guilt.'" *United States v. Brandon*, 847 F.2d 625, 630 (10th Cir.), *cert. denied*, 488 U.S. 973, 109 S.Ct. 510, 102 L.Ed.2d 545 (1988) (quoting *United States v. Troutman*, 814 F.2d 1428, 1455 (10th Cir.1987) (further citations omitted).

Defendant and her husband were convicted of two counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i), entitled "Laundering of monetary instruments," (hereafter, "the money laundering statute"). The statute provides:

Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—

I told you that you will have to give separate consideration to the case against each Defendant, each is entitled to your separate consideration. You—all recall that. Well, I see nothing but affirmative nods. It's important that I reiterate that principle now.

Ladies and Gentlemen, if you recall and interpret the testimony of the Defendant Johnny Sanders to be a denial by him that he engaged in any illegal drug dealings since January 1983, when, as he testified and others, he was reincarcerated, the exhibits seized under the warrant that issued up in Kansas City may be considered by you solely on the question of whether Mr. Sanders was telling the truth in such a denial. This evidence only goes to the question of Mr. Sanders' credibility as a witness. It is not evidence that may be considered by you in support of any count of the Indictment itself, because the latest date of any conduct charged in the Indictment is the

date December 10th, 1987; and things that transpired in 1989, on the face of it, could not apply to a charged offense in 1987. So with respect to Mr. Sanders, I repeat, the only significance that this might have, and this too is solely up for your evaluation, is does it rebut the truth of anything that Mr. Sanders told you.

The evidence is not admissible and may not be considered by you with respect to the case against Mrs. Sanders at all, has nothing to do with any part of the case against Mrs. Sanders. I said this is an important instruction, and because of that let me ask you this: Is there any one of you who would experience the slightest difficulty in applying and following the instruction I just gave you? Is there any such person on the Jury?

Apparently not.

(R. Vol. XIX, 2312–14).

(B) knowing that the transaction is designed in whole or in part—

    (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; . . .

shall be sentenced to a fine . . . or imprisonment for not more than twenty years, or both.

Sanders' convictions under the money laundering statute were based upon two car purchases: the November 6, 1986 purchase of a Volvo and the April 24, 1987 purchase of a Lincoln. Defendant argues that these car purchases were ordinary commercial transactions and that the evidence at trial failed to establish that these transactions were designed to conceal or disguise proceeds from the sale of drugs.

The 1986 Volvo, which formed the basis for Count 14 of the superseding Indictment, was ordered by the Sanderses for Mrs. Sanders on October 18, 1986, less than one month after the Sanders' marriage, using Mrs. Sanders' 1981 Volvo as a trade-in. (R. Vol. XIII, 1419–1421). The Sanderses paid a $500 cash deposit at the time the order was placed. (R. Vol. XIII, 1422). When the Volvo was delivered on November 6, 1986, the Sanderses paid for the car by a combination of $3,535 in cash, which was received from Mr. Sanders, and a $10,000 credit union bank draft. (R. Vol. XIII, 1423, 1425). At the time of the Volvo purchase, Mrs. Sanders was employed by the Oklahoma State Tax Commission and she took out the $10,000 loan from her credit union to purchase the Volvo. (R. Vol. XIX, 2337; Vol. XVIII, 2083). The Sanderses personally handled the transaction to purchase the Volvo and were readily identified by the salesperson with whom they dealt. (R. Vol. XIII, 1417). The salesperson described the approximately $3500 cash payment as a "normal cash transaction." (R. Vol. XIII, 1423).

Defendant's second money laundering conviction (Count 18 of the superseding Indictment) is based upon the purchase of a Lincoln. On April 24, 1987, the Sanderses went to a Lincoln/Mercury dealership and traded in an old Lincoln for a new one, tendering $11,400.00 in cash for the trade-in difference. (R. Vol. XIII, 1358–59, 1363). Mr. Sanders told the salesman that the car was to be titled in the name of his daughter, Denise Sanders. (R. Vol. XIII, 1364–65). Mr. Sanders testified that he titled the car in his daughter's name to obtain lower insurance rates. (R. Vol. XVIII, 2089). Approximately ten minutes thereafter, Denise Sanders arrived at the car lot. (R. Vol. XIII, 1365). In the meantime, Mrs. Sanders had signed Denise's name as purchaser. (R. Vol. XIII, 1368). All three of the Sanderses were readily identified by the Lincoln salesperson with whom they had dealt. (R. Vol. XIII, 1359, 1365). Both the Volvo and the Lincoln were conspicuously used by the Sanderses.

In this appeal, defendant argues that there is insufficient evidence that these car purchase transactions were designed to conceal the identity of the participants to sustain her convictions for violating the money laundering statute. Defendant argues that a necessary element of a violation of the money laundering statute is knowledge that the transaction in question is designed at least in part to conceal or disguise the nature, the source, the ownership, or the control of the proceeds of unlawful activities. Specifically, defendant contends that the undisputed fact that she and her husband were personally present when the cars were purchased and that the Sanderses used the cars conspicuously after they were purchased undermine the element of concealment. Defendant further argues that although the Lincoln was titled in Mr. Sanders' daughter's name, there remains insufficient evidence of a design to conceal her identity as the source of the proceeds because all three Sanderses, including the daughter, were present when the car was purchased and that, because Denise shared the family's last name, her connection to Mr. and Mrs. Sanders would be obvious. She also argues that the money laundering law was not intended to apply to "ordinary commercial transactions" (albeit by alleged drug dealers) but rather was directed toward transactions designed to conceal the identity of the participants to a transaction (including

for example, those transactions where third parties are used to make purchases).

The government essentially presents no arguments to counter defendant's contentions with respect to the Volvo purchase. With respect to the purchase of the Lincoln, the government argues that the design of concealment is evidenced by several facts: that the Sanderses paid $11,400 in cash for the car, and that the Sanderses titled the car in the name of Mr. Sanders' daughter, that Mrs. Sanders signed the purchase agreement for the car as "Denise Sanders," and that Denise Sanders was never observed driving the car. The government's basic position, however, is that the money laundering statute should be broadly interpreted to include all purchases made by persons with knowledge that the money used for the transaction represents the proceeds of illegal activity.

We reject the government's argument that the money laundering statute should be interpreted to broadly encompass all transactions, however ordinary on their face, which involve the proceeds of unlawful activity. To so interpret the statute would, in the court's view, turn the money laundering statute into a "money spending statute." This interpretation would be contrary to Congress' expressly stated intent that the transactions being criminalized in the statute are those transactions "designed to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." 18 U.S.C. § 1956(a)(1)(B)(i). Thus, by the express terms of the statute, a design to conceal or disguise the source or nature of the proceeds is a necessary element for a money laundering conviction.[2] In other words, the purpose of the money laundering statute is to reach commercial transactions intended

(at least in part) to disguise the relationship of the item purchased with the person providing the proceeds and that the proceeds used to make the purchase were obtained from illegal activities.

Further, we agree with defendant that the evidence of a design to conceal the nature or source of the proceeds used to purchase the cars was insufficient to support her convictions. Clearly, the transaction involving the purchase of the Volvo, and to a slightly lesser extent the purchase of the Lincoln, differ from what could be described as a "typical money laundering transaction" in the Sanderses' failure to use a third party to make the car purchases and thereby conceal the buyers' identities. *See, e.g., United States v. Lee,* 886 F.2d 998 (8th Cir.1989), *cert. denied, Paige v. United States,* — U.S. —, 110 S.Ct. 748, 107 L.Ed.2d 765 (1990). As outlined above, both defendant and her husband, Johnny Lee, were present at these purchases and were readily identified by the respective salespersons involved. Further, both cars were conspicuously used by the Sanderses, making the association of these vehicles with the Sanderses obvious to law enforcement.

Although the Lincoln purchase clearly presents a closer case in favor of conviction than the Volvo purchase, we hold that the evidence in connection with the Lincoln purchase was also insufficient to support defendant's conviction. Although Mr. Sanders titled the Lincoln in his daughter's name, and Mrs. Sanders signed the daughter's name to the car purchase agreement, we conclude that the daughter's presence in person at the car lot during or somewhat subsequent to the transaction, the fact that the daughter shared the family last name, and defendant's and her husband's conspicuous use of the car after the purchase,

2. The legislative history supports our interpretation of the statute. Senate Report No. 99–433 accompanied Senate Bill No. 2683 which contained the same language as that passed Public Law 99–570, "The Money Laundering Control Act of 1986." 100 Stat. 3207–18. The Senate Report states: "Section 1956(a)(1) is the basic money laundering offense.... This section ... appli[es] its coverage to those transactions that can be said to constitute the core of money laundering—transactions designed to conceal or disguise the nature, location, source, ownership, or control of criminal proceeds, or to evade Federal or State cash reporting requirements. This language is intended to include transactions designed to conceal the identity of the participants to the transaction, where it can also be proved that the funds involved in the transaction are in fact the proceeds of the crime." *Id.* at 10.

undermine the government's argument (based in large part upon the titling of the car in the daughter's name), that the Lincoln purchase involved the requisite design of concealment.[3]

Therefore, because on this record we hold that there was insufficient evidence of concealment in defendant's car purchases to support her convictions under the statute, defendant's convictions for money laundering (Counts 14 and 18 of the superseding Indictment) will be reversed.

## IV.

■ Because of our holding in part III. of this opinion that defendant's convictions under the money laundering statute should be vacated, defendant's substantive conviction for RICO under 18 U.S.C. § 1962(c) must also be vacated because this conviction is no longer supported by two racketeering acts. *See United States v. Joseph,* 781 F.2d 549, 554 (6th Cir.1986). Although Mrs. Sanders was charged with five predicate racketeering acts (charged in Counts 3, 14, 15, 18 and 31 of the superseding Indictment), she was acquitted on Count 15 (a money laundering charge) and on Count 31 (alleging phone facilitation of the heroin distribution conspiracy). Thus, of the three counts on which she was convicted, only one count of conspiracy to distribute heroin remains in light of part III. of this opinion. This is insufficient to support defendant's substantive RICO conviction. *Id.*

■ We also conclude defendant's single conviction for conspiracy to distribute heroin is insufficient to support her conviction for conspiracy to commit RICO. *United States v. Ruggiero,* 726 F.2d 913, 921 (2d

Cir.), *cert. denied, Rabito v. United States,* 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984) (requiring proof of defendant's agreement to personally commit two or more racketeering acts to sustain a RICO conspiracy violation) (citations omitted); *see Cardall,* 885 F.2d at 682 (distinguishing *Ruggiero* on the facts but citing the legal principle with apparent approval). *But see, Joseph,* 781 F.2d at 554 (holding that for a conviction under 18 U.S.C. § 1962(d), it is only necessary to prove that defendant agreed that *another* violate § 1962(c) by committing two acts of racketeering activity) (citation omitted) (emphasis added).

In holding that defendant's conviction for conspiracy to commit RICO should be reversed because she was convicted of only one predicate act, we note that this issue was not directly addressed by the parties in their briefs or at oral argument. We also note that the instruction given by the court was worded in the alternative; thus, we cannot summarily dispose of this issue under the "law of the case doctrine" as we previously did in *United States v. Killip,* 819 F.2d 1542, 1548 (10th Cir.), *cert. denied, Marr v. United States,* 484 U.S. 865, 108 S.Ct. 186, 98 L.Ed.2d 139 (1987). Therefore, although this issue may be ripe for reconsideration at a future time and upon an opportunity for fuller briefing by the parties, for purposes of this appeal we adopt the rule of law that the defendant must agree to personally commit two predicate acts, not merely agree to the commission of two predicate offenses by any conspirator. *Ruggiero,* 726 F.2d at 921. Thus, we conclude that defendant's convictions for RICO and conspiracy to commit RICO should also be vacated; defendant's

3. In support of its argument that the evidence was sufficient to sustain a conviction under the statute with regard to defendant's purchase of the Lincoln, the government cites *United States v. Franklin,* 902 F.2d 501, 510 (7th Cir.), *cert. denied, Mann v. United States,* — U.S. ——, 111 S.Ct. 274, 112 L.Ed.2d 229 (1990). Although the court finds that this case is somewhat inapposite because the validity of the conviction under the money laundering statute was not at issue in *Franklin,* we further find that *Franklin* is factually distinguishable from the present case. In *Franklin,* defendant Andrea Mann participated in at least four activities "related to money laun-

dering." *Id.* These activities included allowing two vehicles that she knew were purchased with proceeds from her brother's drug sales to be titled in her name. She also converted drug proceeds from cash to cashier's checks and back to try to disguise the source of payments on a Mercedes. She also placed her name on safety deposit boxes which were used to store large amounts of her brother's drug proceeds. Thus, the defendant's activities in *Franklin* involved both a greater quantity of activity and activity of a qualitatively different nature than that presented here.

remaining arguments in this regard are now moot and will not be further considered here.

## V.

■ Defendant contends that the evidence was insufficient to support her conviction for conspiracy to distribute heroin in that it failed to establish her agreement to commit the crime of heroin distribution. In support of her argument, defendant cites *United States v. Jones*, 808 F.2d 754, 755 (10th Cir.1987). As stated above, a single test applies in reviewing the sufficiency of the evidence in criminal cases: "[t]he evidence—both direct and circumstantial, together with reasonable inferences to be drawn therefrom—is sufficient if, when taken in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *Hooks*, 780 F.2d at 1531.

In its responsive brief, the government submits that the evidence was sufficient to sustain defendant's conviction for conspiracy to distribute heroin. Specifically, the government presented evidence at trial to show that defendant first had knowledge of Johnny Lee Sanders' heroin distribution operation in 1987. (R. Vol. XI, 1146–48). Defendant also frequently took messages concerning the heroin distribution organization. When a dispute arose between two members of the group, Delma Hill and Marion Johnson, defendant relayed a message to Delma Hill from Johnny Lee Sanders that "whatever Mary says goes." (R. Vol. XII, 1190–1206; Exhibits 319A–D).

Further, evidence was presented at trial that upon instruction from Johnny Lee Sanders, defendant telephoned the Oklahoma Tax Commission and determined that a vehicle which Mr. Sanders had observed following him was owned and operated by the Oklahoma City Police Department. (R. Vol. XIV, 1561–65; Exhibits 313–C). At trial, evidence was also presented that defendant was involved in the distribution of heroin by taking and conveying messages from customers; specifically, an incident in which defendant was asked to relay a message to her husband regarding an order for heroin placed and later canceled by Sandra Davis in December 1987 was presented at trial. (R. Vol. XI, 1148–49, 1111, 1117, 1168).

The government also put on evidence that defendant was involved in the transfer of funds to facilitate the wholesale purchases of heroin by Johnny Lee Sanders, including a November 6, 1987, wire transfer of $1000 to Johnny Lee Sanders from Renee Sanders. (R. Vol. XVIII, 2170–71, Exhibit 247). In support of its argument that the evidence of Mrs. Sanders' agreement to commit the crime of heroin distribution was sufficient to support her conviction for conspiracy to distribute heroin, the government further points to evidence discovered upon the search of defendant's and Mr. Sanders' shared residence in Oklahoma City, Oklahoma: *i.e.*, $27,000.00, $140 of which had been used in undercover purchases of heroin, as well as approximately 1990 balloons used in packaging heroin. (R. Vol. XIV, 1643, 1644, Vol. XII, 1292).[4]

The court concludes that, when viewed in the light most favorable to the government, the evidence presented at trial was sufficient to sustain defendant's conviction for conspiracy to distribute heroin. Thus, the court concludes defendant's arguments in this regard are without merit.

## VI.

■ In her final argument on appeal, defendant contends that the trial court misapplied the sentencing guidelines by erroneously determining the amount of drugs to be utilized in arriving at her base offense level. The application of the sen-

---

**4.** Elsewhere in its responsive brief, the government also argues that Mrs. Sanders' awareness of, and participation in, the heroin distribution conspiracy is evidenced by Mrs. Sanders' presence at a heroin transaction in October 1985, Plaintiff–Appellee's Brief, at 17, and Mrs. Sanders' questioning of Sandra Davis while both were incarcerated in the Oklahoma City Jail with regard to the extent of Davis' prior knowledge concerning the police search of Johnny Lee Sanders' business, Johnny's Hand Car Wash, on December 10, 1987. Plaintiff–Appellee's Brief, at 18.

tencing guidelines presents a mixed question of fact and law. *United States v. Roberts*, 898 F.2d 1465, 1468–69 (10th Cir. 1990). However, factual findings used to determine the appropriate sentencing guideline range are reviewed under a clearly erroneous standard. *United States v. Williams*, 897 F.2d 1034, 1040 (10th Cir. 1990). A finding can be said to be clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

█ In sentencing defendant on her RICO, RICO conspiracy and drug conspiracy convictions, the trial court used § 2D1.1(a)(3), the guideline for conspiracy to distribute drugs. This guideline section provides that the base offense level is to be determined by the Drug Quantity Table. After reviewing the presentence report and receiving testimony at Mrs. Sanders' sentencing hearing, the trial court, over defendant's objections, employed the quantity of 8,624 grams to arrive at a base offense level of 34. This quantity, however, was limited to the approximate time Mr. and Mrs. Sanders were married. (R. Vol. XXII, 7–8).

In imposing an appropriate sentence under the guidelines, a trial court is not limited to the amounts charged in the Indictment. *United States v. Ware*, 897 F.2d 1538, 1542–43 (10th Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 2629, 110 L.Ed.2d 649 (1990). The amounts upon which a defendant may be sentenced include such amounts as it is shown that she either knew or should have known were involved in the conspiracy. *United States v. Williams*, 897 F.2d 1034, 1041 (10th Cir. 1990) (citing *United States v. Warters*, 885 F.2d 1266, 1273 (5th Cir.1989)); *see* U.S. S.G. § 1B1.3, comment. (n. 1).

In this appeal, defendant argues that there was no evidence that she had actual knowledge of 8,624 grams of heroin being distributed in the conspiracy. She also argues that the evidence was insufficient to show that she reasonably should have known that this quantity of heroin was being distributed. In overruling defendant's objections on this point, the sentencing court stated as follows:

THE COURT: There is, of course, both a legal and factual component to the objection that we're considering. The legal principle is stated in the last sentence of the application notes following guideline 2D1.4. That principle has gained a great deal of acceptance of case law to the effect that a Defendant's responsibility in a conspiracy case indeed extends to the amount of trafficking that was reasonably foreseeable, as well as that which was [sic] personal responsibility of the Defendant.

This was a case emphatically described in the evidence of an ongoing, sizable conspiracy, the purpose of which was to turn over as much heroin as possible, as profitably as possible; and it was certainly in my view reasonably foreseeable to someone like Mrs. Sanders, found by the Jury to have been a participant in this, that the amount would be whatever the suppliers were capable of supplying for marketing by the Oklahoma City end of the operation. It does seem a bit tautologically [sic] but the reasonably-foreseeable amount was any amount that anybody brought in for anybody in the organization to package and sell.

Now, with respect to the particular calculations submitted by Officer Hill, I find those are, of course, consistent with the evidence at trial. I'm not personally aware of parole statements made by Mr. Rogers and that kind of material, but the witness I think has very credibly presented that the information he has obtained in addition to the trial testimony is consistent with the trial testimony. And the level we're speaking of here is a level that goes from a minimum of three to a maximum of 9.9 kilograms, so you can be far more conservative even than Lieutenant Hill was and fall within that bracket. The calculation by Lieutenant Hill would put one toward the upper end of the bracket. So the objection four is overruled, and the Court will find that of-

fense severity level 34 is the appropriate level.

(R. Vol. XXII, 15–16).

On this record, we cannot conclude that the district court's factual conclusion that defendant could reasonably foresee the extent of the heroin distribution conspiracy is clearly erroneous. Because we find no error of fact or law in sentencing, we conclude that defendant's arguments in this regard are without merit.

In accordance with this opinion, we remand this case to the district court to vacate sentence with regard to those counts upon which defendant's convictions have been overturned.