946 F.2d 896
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Earnest CONNER, Defendant-Appellant.
 No. 90-3470.
 United States Court of Appeals, Sixth Circuit.
 Oct. 23, 1991.
 
 Before NATHANIEL R. JONES and RYAN, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Appellant Earnest Conner appeals from his convictions for drug-related offenses and laundering monetary instruments. For the reasons stated below, we affirm the convictions.
 
 FACTS
 
 2
 Conner was a businessman who owned a deli, a bar, and a video store in Cleveland, Ohio. In 1988, the FBI and local police investigated Conner for dealing cocaine. On July 15 and 22, 1988, a confidential informant made controlled purchases of cocaine from Conner. Thereafter, Conner's businesses were searched and more cocaine was found. Conner learned of the searches and fled to Virginia where he was apprehended in September 1989. On October 17, 1989, Conner was indicted on one count of engaging in a continuing criminal enterprise, i.e. a large narcotics distribution business, two counts of possessing with intent to distribute cocaine, and two counts of aiding and abetting the laundering of monetary instruments. Conner filed a motion to suppress all statements he made after arrest. The district court granted the motion in part, suppressing Conner's statements specifically related to his drug activities, but denied the motion with regard to all other statements.
 
 
 3
 At trial, one of Conner's associates testified that Conner had been distributing cocaine since 1984. Another of Conner's associates testified that her daughter had taken two trips to California with Conner and that after each trip a Federal Express package arrived at her house. She opened the second package and found a substantial amount of cocaine. Conner picked up both of the packages. Finally, Conner's son testified that his father supplied him and others with cocaine to sell. A jury found Conner guilty on all counts. He was sentenced to 400 months in prison. This appeal followed.
 
 SUPPRESSION OF STATEMENTS
 
 4
 Conner first argues that the district court erred in not suppressing all the statements he made to FBI Agent Bonner after arrest. At the suppression hearing, Conner acknowledged that Bonner had read him his Miranda rights twice before beginning the interview and that he had signed a waiver form. Although Conner testified that he did not understand all that was read to him, he testified that he understood he had the right to remain silent, that his statements could be used against him, that he had the right to a lawyer regardless of whether he could pay for one, and that he could stop answering questions at any time. Bonner testified that Conner indicated that he did not want to talk about narcotics activity without a lawyer present and that he did not pursue the subject after Conner objected. Instead, they talked about gambling operations in Cleveland, Conner's acquisition of property, and Conner's activities while living in Virginia.
 
 
 5
 The district judge ruled that Conner had been fully advised of his rights and that he had knowingly signed the waiver. The district court also found that Conner had invoked his rights only with regard to his narcotics activities and suppressed only that portion of the interview. These findings by the district court are reviewed under a "clearly erroneous" standard and great deference is to be afforded to the trier of fact who had the opportunity to observe the witnesses' demeanor. United States v. Dennis, 701 F.2d 595, 598 (6th Cir.1983).
 
 
 6
 Conner relies on Edwards v. Arizona, 451 U.S. 477, 484-85 (1981) for the proposition that when an accused has invoked his right to counsel, he "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." Furthermore, a valid waiver of the right to counsel "cannot be established by showing only that [the accused] responded to further police-initiated custodial interrogation even if he has been advised of his rights." Id. Thus, Conner concludes that Bonner was obligated under Edwards to cease questioning.
 
 
 7
 Conner's argument presupposes that he made an unequivocal request for counsel. The Supreme Court has held that an accused may invoke his right to counsel for some purposes without invoking it for all purposes. Connecticut v. Barrett, 479 U.S. 523 (1987) (accused who agreed to make an oral statement, but refused to make a written statement without an attorney present had only invoked the right to counsel with regard to the written statement). Similarly, the district court in this case found that Conner had only invoked his right to counsel with regard to discussion of his narcotics activities. Given the testimony cited above, we cannot say that the district court's finding was clearly erroneous.
 
 
 8
 Conner also complains that some of Bonner's trial testimony violated the suppression order. Bonner testified that Conner had told him that he fled Cleveland because seven ounces of cocaine had been found at his deli, that he knew he was wanted and would have to "pay for his sins," and that he knew and took trips with some people who were otherwise identified as involved with drugs. Admission of this testimony is questionable in light of the suppression order. However, it is subject to harmless error analysis. In Bailey v. Hamby, 744 F.2d 24, 27-28 (6th Cir.1984), this court ruled that the admission of a confession obtained after the defendant requested counsel was harmless error because the confession was a small part of the evidence and there was other substantial evidence against the defendant. In this case, substantial evidence against Conner was presented through the testimony of the undercover purchaser, Conner's son, and several of his other drug associates. Thus, even assuming arguendo that the testimony was admitted in error, we conclude that it constitutes only a small portion of the evidence and that it is harmless in light of the substantial evidence against Conner.
 
 SIXTH AMENDMENT RIGHT TO COUNSEL
 
 9
 Conner next argues that Bonner's interrogation violated his sixth amendment right to counsel. Conner notes that he appeared before a magistrate for a pretrial detention hearing prior to Bonner's interrogation. He argues that his right to counsel attached at that time and remained in force at later interrogations. It is true that a defendant is entitled to counsel at all critical phases of prosecution unless that right is waived. Michigan v. Jackson, 475 U.S. 625, 633 (1986); Brewer v. Williams, 430 U.S. 387, 401 (1977). However, as the Government notes, Conner failed to raise this issue in the district court and therefore has waived it for review by this court. Although this court may take notice of plain errors affecting substantial rights, Fed.R.Crim.P. 52(b), we are convinced that no plain error has occurred here.
 
 
 10
 Conner was arrested on September 1, 1989 and initially appeared before the magistrate on September 5. Conner stated that he had retained counsel, but could not furnish the court with the attorney's name. The hearing was continued until September 7 in order for Conner to make arrangements with his attorney. Conner appeared again on September 7 without counsel and the bond hearing proceeded without counsel. Bonner interviewed Conner on September 11 and at that time Conner signed the waiver of his right to counsel.
 
 
 11
 Conner was given ample opportunity to retain or request counsel prior to September 11, but failed to do so. The district court found that Conner knowingly and voluntarily waived his rights on September 11 with respect to all statements except those regarding narcotics activities. Thus, we find this assignment of error to be without merit.
 
 MONEY LAUNDERING CHARGES
 
 12
 Conner was charged with two counts of aiding and abetting his real estate agent in laundering money. The money laundering statute, 18 U.S.C. § 1956(a)(1)(B)(i) and (ii), provides:
 
 1956. Laundering of monetary instrument
 
 13
 (a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity--
 
 
 14
 * * *
 
 
 15
 * * *
 
 
 16
 (B) knowing that the transaction is designed in whole or in part--
 
 
 17
 (i) to conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of specified unlawful activity; or
 
 
 18
 (ii) to avoid a transaction reporting requirement under State or Federal law
 
 
 19
 shall be sentenced to a fine ... or imprisonment ... or both.
 
 
 20
 The money laundering charges arise from Conner's delivery of $50,000 and $51,000 in cash to his real estate agent to be used for the downpayment on his home. The money was transferred in an attache case and a shoebox. Conner instructed his agent to convert the cash into cashier's checks, each under the $10,000 reporting requirement.
 
 
 21
 Conner argues that the evidence is insufficient to support his conviction on these counts. He notes that he had legitimate sources of income from his deli, bar, and video store. Conner's son testified that the deli alone grossed between $670.00 and $770.00 per day, although testimony established that Conner failed to pay any income taxes on the proceeds from his businesses. Thus, Conner concludes that the evidence is insufficient to show either that the downpayment money was in fact from cocaine sales or that he knew it was from drug sales. Conner also maintains that there is insufficient proof to show that the transaction was intended to "conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds," 18 U.S.C. 1956(B)(i), because each check named the remitter as "Earnest Conner," "E. Conner," or "J. Conner."
 
 
 22
 Furthermore, Conner asserts, without citing authority, that because the statute refers to "proceeds" of unlawful activity, the Government must show that the entire $101,000 was proceeds from cocaine distribution. Conner bases this last contention on an analogy to the forfeiture statute, 21 U.S.C. § 881. Under the forfeiture statute, where legitimate and illegitimate funds are comingled, the funds are forfeitable only to the extent that the funds can be traced to an illegal transaction. United States v. Banco Cafetero Panama, 797 F.2d 1154, 1159 (2nd Cir 1986).
 
 
 23
 Addressing Conner's second argument first, we note that the Seventh Circuit recently faced a similar challenge. The Seventh Circuit ruled, as a matter of statutory construction, that Congress did not intend the word "involve" to impose the requirement that the Government trace the origin of all funds used in a transaction. United States v. Jackson, --- F.2d ----, U.S.App. LEXIS 12088 (1991). We note that the forfeiture statute uses the phrase "all proceeds traceable," 21 U.S.C. 881(a)(6), whereas the money laundering statute uses no such language. Additionally, the Seventh Circuit observed that the defendant's interpretation would allow participants in unlawful activity to prevent their convictions under the money laundering statute merely by comingling legitimate and illegitimate funds. Jackson, supra, at 14. We are persuaded by the Seventh Circuit's reasoning and reject Conner's argument that the entire amount involved in the transaction must be derived from specified unlawful activities.
 
 
 24
 With regard to sufficiency of the evidence, the standard "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in the original). As it has been noted by both the Seventh and Tenth Circuits, a conviction under § 1956(a)(1)(B)(i) requires more than proof of expenditure of ill-gotten gains. Jackson, supra, at 21; United States v. Sanders, 929 F.2d 1466, 1472 (10th Cir.1991) (money laundering conviction overturned due to insufficient proof that car purchase was designed to conceal identity of the participants where individuals appeared in person to purchase car and merely used $3,535 and $11,400 in cash to makes purchases). Proof of an effort to conceal or disguise the nature, location, source, ownership, or control of the funds is necessary. 18 U.S.C. § 1956(a)(1)(B)(i). However, the intent element can be proven by circumstantial evidence. United States v. Blackman, 904 F.2d 1250, 1257 (8th Cir.1990).
 
 
 25
 In this case, the Government established that Conner had been the leader of a large cocaine distribution operation for several years. The cash for the downpayment was in small denominations and was delivered in an attache case and a shoebox. Conner did not convert the cash to cashier's checks himself. Instead he instructed his real estate agent to obtain all cashier's checks under the $10,000 reporting limit. These instructions are evidence that Conner intended to avoid the transaction reporting requirement imposed by 18 U.S.C. § 1956(a)(1)(B)(ii). The fact that Conner did not obtain the cashier's checks himself suggests an attempt to conceal the nature, source, ownership, or control of the money. All but one check showed "E. Conner" or "J. Conner" as remitter. Presumably "J. Conner" stood for "James Conner," one of Conner's aliases. Thus, the names on the checks do not support Conner's contention that there was no attempt to conceal his identity. Quite the contrary. Conner also gave his agent falsified income tax returns to make it appear that he had sufficient legitimate income to purchase the house. Finally, cash stuffed into a shoebox could hardly be considered a normal cash transaction. Viewing this evidence in the light most favorable to the prosecution, we conclude that it is sufficient to support the conviction for aiding and abetting money laundering. Accordingly, we affirm Conner's conviction on this count.
 
 OBSTRUCTION OF JUSTICE ENHANCEMENT
 
 26
 Finally, Conner argues that the district court erred in increasing his base offense level by two for obstruction of justice. Section 3C1.1 provides:
 
 
 27
 If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.
 
 
 28
 Conner relies on United States v. Stroud, 893 F.3d 504 (2nd Cir.1990), a case in which a bank robber was interrupted by the police and led them on a frenzied chase across rooftops, over fences, and into traffic. The Second Circuit held that "mere flight in the immediate aftermath of a crime, without more, is insufficient to justify a section 3C1.1 obstruction of justice enhancement." Id. at 507. Conner asserts that, as in Stroud, his flight from Cleveland to Virginia was insufficient to justify a § 3C1.1 enhancement for willful obstruction of justice.
 
 
 29
 What Conner's argument overlooks is that instinctual flight from the scene of a crime can ripen into a willful attempt to obstruct justice. The Second Circuit stated:
 
 
 30
 [T]he purpose of Stroud's flight was not a deliberate pre-or post-arrest attempt to frustrate or impede an ongoing criminal investigation, as in the case of an individual who flees while being sought for questioning some time after the commission of a crime. Nor is this a case where instinctual flight, due to its duration or acts occurring in the course thereof, ripens into a willful attempt to impede or obstruct the administration of justice.
 
 
 31
 Stroud, supra, at 508.
 
 
 32
 In the present case, Conner admitted to FBI Agent Bonner that he knew he was wanted by the FBI after the seizure of cocaine from his businesses. Conner's flight to Virginia was a deliberate attempt to avoid prosecution and indeed delayed his apprehension by nine months. Thus, we conclude that this is a case where flight ripened into a willful attempt to obstruct or impede an ongoing investigation. Accordingly, we affirm the district court's sentence enhancement.