21 F.3d 429
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee;
v.
John G. WESTINE, Jr., Defendant-Appellant.
 No. 92-3664.
 United States Court of Appeals, Sixth Circuit.
 March 17, 1994.
 
 Before: JONES and SUHRHEINRICH, Circuit Judges; and McKEAGUE, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant-Appellant John G. Westine, Jr., appeals his conviction for money laundering in violation of 18 U.S.C. Secs. 1956(a)(1)(A)(i)-(B)(i) and 2, claiming that Plaintiff-Appellee United States failed to produce sufficient evidence to support the conviction, and that he was denied his Sixth Amendment right to counsel. Because we find Westine's arguments to be without merit, we affirm.
 
 I.
 
 2
 On October 23, 1991, a federal grand jury returned a thirty-six count indictment against Westine, charging him in a single count with conspiracy to commit mail fraud, wire fraud, the interstate transportation of property taken by fraud, and money laundering, in violation of 18 U.S.C. Sec. 371; thirty-one counts of interstate transportation of property taken by fraud, in violation of 18 U.S.C. Secs. 2314 and 2; two counts of mail fraud, in violation of 18 U.S.C. Secs. 1341 and 2; one count of wire fraud, in violation of 18 U.S.C. Secs. 1343 and 2; and one count of money laundering, in violation of 18 U.S.C. Secs. 1956(a)(1)(A)(i)-(B)(i) and 2.
 
 
 3
 Viewed in the light most favorable to the government, the evidence at trial revealed that between April and June of 1989, Westine[1] devised a scheme to defraud investors of millions of dollars. Tri-State Development ("Tri-State"), a bogus entity, served as the centerpiece of the plan, which involved using high-pressure telephone tactics to sell interests in non-existent oil-well projects in Indiana and Illinois, as well as in a non-existent tanker load of crude oil.
 
 
 4
 Westine conducted his telemarketing operations out of a number of small offices in southern California. Using the alias "Michael Fairchild," Westine and his salespersons told potential customers that they were calling from Cincinnati, Ohio--the purported headquarters of Tri-State. To create the illusion of a Tri-State home office, Westine hired a secretarial service in Cincinnati to answer customer inquiries. All investors were instructed to send their purchase money via Federal Express to that address. To complete his plan, Westine had an accomplice rent an office in Cincinnati and open a number of different bank accounts in the area to deposit the investors' payments.[2]
 
 
 5
 A convoluted and multi-faceted banking structure allowed Westine to manipulate the dispersement of the funds in an attempt to render them untraceable. Some of the fraud proceeds were transferred into a separate Cincinnati bank to create a fund for making "royalty payments" back to the defrauded investors, but the bulk of the funds were wire transferred to Westine in California. Westine then moved the funds to fourteen other accounts that he controlled--none of which bore the name of Tri-State Development.[3] Using both personal and cashier's checks, Westine shuffled the funds among the California accounts and proceeded to spend them on a variety of personal goods and services.
 
 
 6
 In sum, of the $3.4 million collected, Westine returned approximately ten percent to investors in the form of "royalty payments," used ten percent for the Cincinnati office expenses, and paid ten percent to his salespersons as commissions. The remaining seventy percent went directly to Westine for his personal use. Based upon the foregoing evidence, the jury found Westine guilty on all counts. On appeal, Westine contends that the Government's evidence does not support the conviction for money laundering and asks this court to vacate his sentence of 235 months. Moreover, Westine argues that his attorney's failure to raise this issue at trial resulted in a denial of his Sixth Amendment right to effective representation by counsel. We conclude that both contentions are without merit.
 
 II.
 
 7
 Westine's appeal focuses on his claim that the Government failed to present sufficient evidence to support his conviction for laundering the proceeds of his investment scam. Specifically, Westine contends that his acts in spending the "dirty" money did not evidence an intent either to promote the scam or to conceal the nature, location, source, ownership, or control of the funds.
 
 
 8
 Our standard of review is limited to assessing whether substantial evidence supports the jury's verdict. See United States v. Scartz, 838 F.2d 876, 878 (6th Cir.) (citing Glasser v. United States, 315 U.S., 60, 80 (1942)), cert. denied, 488 U.S. 923 (1988); see also United States v. Troutman, 814 F.2d 1428, 1455 (10th Cir.1987) (defining "substantial" evidence as that which does more than "raise a mere suspicion of guilt"). The evidence must be viewed in the light most favorable to the government, and reversal is warranted only if the evidence demonstrates that a reasonable mind could not find guilt beyond a reasonable doubt. United States v. McDougald, 990 F.2d 259, 261 (6th Cir.1993); United States v. Beddow, 957 F.2d 1330, 1334 (6th Cir.1992).
 
 
 9
 Section 1956 of the Money Laundering Control Act prohibits financial transactions involving the proceeds of "specified unlawful activity."[4] 18 U.S.C. Sec. 1956(a)(1). While Westine concedes that he defrauded his victims of some $3.4 million, he argues that the Government failed to establish the requisite intent for a violation of the statute. Money laundering--not mere spending--is required for a conviction under the statute. United States v. Sanders, 929 F.2d 1466, 1472 (10th Cir.), cert. denied, 112 S.Ct. 143 (1991). Thus, proof of money laundering requires a showing that the transaction was designed either: 1) to promote the furtherance of the criminal enterprise, or 2) to conceal the nature, location, source, ownership, or control of the illegal proceeds. See Id.; Sec. 1956(a)(1)(A)-(B). These are alternative bases for a money laundering conviction; proof of intent to accomplish either will suffice. United States v. Montoya, 945 F.2d 1068, 1076 (9th Cir.1991); United States v. Jackson, 935 F.2d 832, 842 (7th Cir.1991). Based on the evidence, the jury could have convicted Westine on either theory.
 
 
 10
 The Government produced substantial evidence that Westine engaged in a number of transactions showing his intent to promote his fraudulent scheme. For instance, Westine used the fraud proceeds to disperse "royalty payments" to maintain the patronage of the investors. In addition, he paid office expenses and salespersons' commissions with the funds. Similar facts have formed the basis of other "promotion" convictions. See United States v. Cole, 988 F.2d 681, 682 (7th Cir.1993) (payment of "interest" to defrauded investors promoted fraudulent scheme); United States v. Skinner, 946 F.2d 176, 177-78 (2d Cir.1991) (payments to drug supplier promoted series of cocaine sales). Westine attempts to rebut this evidence by noting that he only used an insignificant portion of the defrauded funds to engage in these transactions.[5] The money laundering statute, however, criminalizes transactions that involve the proceeds of the unlawful activity; there is no requirement that the transaction stem from some minimum percentage of "dirty" money.
 
 
 11
 In addition to using the defrauded funds to promote the investment scam, the Government's evidence also established that Westine engaged in transactions that "concealed" those proceeds within the meaning of section 1956. Most notably, Westine's establishment of a multi-layered banking structure to transfer and disperse the defrauded funds signifies a clear intent to conceal the fraud proceeds.[6] See United States v. Peery, 977 F.2d 1230, 1234 (8th Cir.1992) (convoluted transactions in transferring funds designed to conceal nature of proceeds), cert. denied, 113 S.Ct. 1354 (1993); United States v. Lovett, 964 F.2d 1029, 1035 (10th Cir.) (elaborate series of banking transactions intended to disguise nature of proceeds), cert. denied, 113 S.Ct. 169 (1992); Beddow, 957 F.2d at 1335 (convoluted financial dealings with banks supported conclusion of intent to disguise source of proceeds); United States v. Cota, 953 F.2d 753, 760 (2d Cir.1992) (strange manner of receiving and depositing unlawful proceeds "most telling" of intent to conceal). As previously noted, Westine opened accounts in Cincinnati using the name of Tri-State Development and then transferred the majority of the funds via a series of wire transfers and cashier's checks to a personal account in California, where they were dispersed to still other accounts within the state.
 
 
 12
 Moreover, Westine's disbursement of "royalty payments" out of the defrauded investors own funds was sufficient, in and of itself, to establish an intent to conceal the funds. Westine's characterization of these monies as "profits," his signing of the checks under the alias identity of "Michael Fairchild," and his establishment of the accounts with false employer identification and social security numbers all support the jury's conclusion that he was being anything but candid.
 
 
 13
 Finally, not only did Westine's management of the fraud proceeds evidence an attempt to conceal the "dirty" money, but his subsequent expenditures of those funds provided even more proof of his criminal intent. Westine maintains that acts of personal consumption cannot be viewed as attempts at concealment where the purchaser makes no attempt to conceal his identity. No doubt this is true, for specific intent is an essential element of money laundering. Sanders, 929 F.2d at 1472 ("[T]he purpose of the money laundering statute is to reach commercial transactions intended (at least in part) to disguise the relationship of the item purchased with the person providing the proceeds...."). But although Westine points to various personal expenses where no attempt was made to conceal his identity, there is considerable evidence that many of his purchases were, in fact, tainted with deceptive representations. For instance, he used the fraud proceeds to purchase luxury automobiles under the aliases John Scott, Michael Scott, and the name of a bogus corporation. And in negotiating for the re-financing of his home, Westine indicated that his wife's employment at "Line Design" would provide the necessary income for mortgage payments.[7] "Line Design," however, was yet another sham corporation created by Westine, and this alleged salary actually represented the investment scam proceeds.[8]
 
 
 14
 In sum, the government's evidence of Westine's money laundering activities was extensive. Its reflection of Westine's intent to promote and conceal the "dirty" money was not only substantial, it was overwhelming. Accordingly, we affirm his money laundering conviction.
 
 III.
 
 15
 Westine's final argument is that his trial attorney rendered ineffective assistance of counsel claim by failing 1) to argue that the money laundering statute did not cover all of his spending transactions, and 2) to request a jury instruction noting that they were to consider whether Westine possessed the requisite intent to conceal the fraud proceeds at every stage of his use of the monies.
 
 
 16
 Westine made no attempt to raise this issue with the district court. Thus, the presumption is that it would be inappropriate to address the merits of the claim. United States v. Wunder, 919 F.2d 34, 37 (6th Cir.1990); see also United States v. Daniel, 956 F.2d 540, 543 (6th Cir.1992) ("Ineffective assistance of counsel claims are best brought by a defendant in a post-conviction proceeding under 28 U.S.C. Sec. 2255 so that the parties can develop an adequate record on the issue."). The only exception is where the record adequately assesses the merits of the allegation. Wunder, 919 F.2d at 37. No such situation, however, is presented here. The record is devoid of any discussion relating to the court's charge conference and therefore does not provide any basis on which to consider Westine's claim.[9] In short, this argument lacks merit.
 
 
 17
 Therefore, for the foregoing reasons, we conclude that the record fails to provide a sufficient basis for reviewing Westine's ineffective assistance of counsel claim and, because the Government produced substantial evidence of his intent to promote the fraudulent plan and to conceal the proceeds, Westine's conviction for money laundering must be AFFIRMED.
 
 
 
 *
 The Honorable David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 John G. Westine used a number of different aliases in executing his fraudulent scam, including "Michael Fairchild," "John Scott," "Michael Scott," and "John Estine."
 
 
 [2]
 All of the Cincinnati accounts were set up with either false Social Security numbers or false employer identification numbers. In addition, "Michael Fairchild," was the signator on the three main accounts
 
 
 [3]
 In fact, Westine opened many of these accounts with false Social Security numbers, dates of birth, or in the name of shell corporations
 
 
 [4]
 Section 1956 provides, in pertinent part: "Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity--
 (A)(i) with the intent to promote the carrying on of specified unlawful activity; or ...
 (B) knowing that the transaction is designed in whole or in part--
 (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity ...
 shall be [punished as specified in the statute]. 18 U.S.C. 1956(a)(1).
 
 
 [5]
 As noted earlier, these transactions represented only 30% of the fraud proceeds, while the remaining 70% went directly to Westine
 
 
 [6]
 Section 1956 defines a "transaction" with respect to a financial institution as including "a deposit, withdrawal, [or] transfer between accounts ..." 18 U.S.C. 1956(c)(3)
 
 
 [7]
 Westine contends that this transaction is analogous to the purchase at issue in Sanders, 929 F.2d 1466. In Sanders, the Tenth Circuit held that the evidence failed to show a design to conceal the nature or source of "dirty" drug money used to purchase automobiles because the defendant-buyers were "readily identifiable" by the salespersons. Id. at 1472 (noting that the transaction differed from a " 'typical money laundering transaction' in the Sanderses' failure to use a third party to make the car purchases and thereby conceal the buyers' identities."). The distinguishing fact in Sanders, however, is that the buyers paid for the autos in full; they were not required to document their ability to make future payments. Id. at 1471-72. Thus, Sanders does not stand for the proposition that mere personal presence exonerates a buyer of any intent to conceal
 
 
 [8]
 The record is replete with still other examples of Westine's intent to conceal the fraud proceeds, such as the deceptive notations that he placed on employees' commission checks. J.A. at 320 (stereo), 1166 (rug), 1166A (lumber, millwork, sprinklers, lawn service, car phone, gardening)
 
 
 [9]
 Even if the record did sufficiently address this issue, Westine's claim would still fail. Under the two-part test of Strickland v. Washington, 466 U.S. 668, 687 (1984), a viable ineffective assistance of counsel claim arises only where it is shown that 1) counsel's performance was deficient, and 2) the deficient performance prejudiced the defense. Furthermore, this analysis must be undertaken with a high degree of deference toward the counsel's performance. Id. at 689 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"). It simply cannot be said that Westine's trial counsel rendered ineffective assistance because of his alleged failure to request the jury instruction now advanced on appeal. Neither the law nor the evidence presented warranted such an instruction, and failure to perform a frivolous act certainly does not rise to the level of deficiency contemplated by Strickland