Brian **HOLLENBACK**, Petitioner–
Appellant,

v.

**UNITED STATES of America,**
Respondent–Appellee.

No. 92–2439.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 2, 1993.

Decided March 8, 1993.

James J. Cutrone (argued), Chicago, IL, for petitioner-appellant.

Bradley W. Murphy, Peoria, IL, Rodger A. Heaton, Asst. U.S. Attys., Springfield, IL, for respondent-appellee.

Before CUMMINGS and FLAUM, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

FLAUM, Circuit Judge.

Brian Hollenback filed a request for relief under 28 U.S.C. § 2255, arguing that he received ineffective assistance of counsel on the direct appeal of his conviction on three counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and one count of conspiracy to impede an Internal Revenue Service ("IRS") investigation in violation of 18 U.S.C. § 371. The defendant's motion alleged that he was constructively denied counsel on appeal because his appellate counsel cited the elements of the

wrong portion of the money laundering statute, subsection (a)(1)(A)(i) (hereinafter "subsection (A)(i)") rather than subsection (a)(1)(B)(i) (hereinafter "subsection (B)(i)"), and that defense counsel failed to raise other arguments on appeal that were clearly stronger than the issues he presented. The district court found that Hollenback had failed to demonstrate that he was prejudiced by his counsel's error and denied the defendant's motion. On appeal, Hollenback argues that the district court erred in finding that he was not constructively denied counsel, thus excusing a showing of prejudice, and, in the alternative, that the district court erred in finding that Hollenback had not demonstrated prejudice.

The three money laundering counts contained in the indictment alleged that Hollenback had violated two subsections of the money laundering statute, subsection (A)(i) and subsection (B)(i). Under 18 U.S.C. § 1956(a)(1), which applied to both subsections cited in the indictment, the government was obliged to prove that Hollenback (1) knowingly conducted a financial transaction (2) that he knew involved funds derived from criminal activity and that in fact involved the proceeds of drug distribution. In addition, if the charge was violation of subsection (A)(i), the government had to prove that Hollenback acted with the intent to promote "specific unlawful activity" as defined in 18 U.S.C. § 1956(c)(7); if the charge was violation of subsection (B)(i), the government had to prove that Hollenback acted with knowledge that the transaction was designed to conceal or disguise the nature or source of the proceeds. The government elected to proceed only on subsection (B)(i), alleging that Hollenback attempted to disguise the nature or source of the proceeds. The government's proof and argument and the instructions to the jury only concerned Hollenback's liability under (B)(i).

On direct appeal of his convictions, Hollenback's defense counsel primarily argued that the evidence adduced at trial on the money laundering charge was insufficient because the government did not introduce any evidence showing that Hollenback knew that the monies involved in financial transactions with his co-defendants were derived from their illegal marijuana distribution scheme. This argument would apply to the second of the three elements needed to obtain a section 1956(a)(1) conviction, and therefore would be an appropriate challenge to either a subsection (A)(i) or a subsection (B)(i) conviction. In addition, defense counsel made a conclusory remark that the evidence was insufficient to show intent to promote the carrying on of the unlawful activity. This second argument directly attacked an element unique to an (A)(i) conviction, and therefore was an inapplicable argument to raise in an appellate brief challenging a (B)(i) conviction. Defense counsel also challenged the sufficiency of the evidence supporting Hollenback's conviction for impeding an IRS investigation. The government's brief, which was written by an Assistant United States Attorney ("AUSA") who had no involvement with the trial, responded to the appellant's arguments without any mention of the erroneous references to the element unique to an (A)(i) conviction.

In *United States v. Brown*, 944 F.2d 1377 (7th Cir.1991), we affirmed Hollenback's conviction and the convictions of his co-defendants. In discussing the arguments raised by Hollenback, we recognized *sub silentio* the applicability of Hollenback's sufficiency of the evidence challenge to a (B)(i) conviction and the section 371 conviction. *Id.* at 1386–88. This court found that there was sufficient circumstantial evidence to allow the jury to find that Hollenback knew that the financial transactions that he structured involved funds derived from criminal activity. *Id.* at 1387–88. Hollenback thereafter obtained new counsel and filed a petition for rehearing that notified the court that his original defense counsel erred in referring to the language contained in subsection (A)(i) in the appellant's brief. We denied the request for rehearing, and Hollenback unsuccessfully sought section 2255 relief in the district court.

## ANALYSIS

Hollenback raised two claims concerning his counsel's performance on appeal.

First, Hollenback claimed that his attorney's performance was so inept that it amounted to a constructive denial of counsel, which was prejudicial *per se* and obviated the usual requirement of a showing of prejudice under the *Strickland* test for ineffective counsel. Second, Hollenback argued that even if his appellate counsel's performance did not sink to the level of denial of counsel, his advocacy was deficient and this deficiency was prejudicial under *Strickland.*

■■■ The Sixth Amendment provides Hollenback with the right to effective assistance of appellate counsel. *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). To prevail on a claim of ineffective assistance of counsel, Hollenback must satisfy the two-pronged test set forth in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Under *Strickland,* Hollenback is obliged to prove that his counsel's performance was deficient and that the deficiency prejudiced the result of his appeal. The *Strickland* test's first prong requires a determination of whether defense counsel's assistance fell below "an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. at 2064. There is a strong presumption that counsel's conduct falls within the reasonable standard of conduct. *Id.; United States v. Balzano,* 916 F.2d 1273, 1294 (7th Cir.1990). In the context of an appeal, counsel need not raise every conceivable argument that is supported by the record. *Evitts,* 469 U.S. at 394, 105 S.Ct. at 834; *Gray v. Greer,* 800 F.2d 644, 647 (7th Cir. 1986). Nonetheless, when "appellate counsel fails to present significant and obvious issues on appeal," his conduct falls below the standard of objective reasonableness. *Gray,* 800 F.2d at 646. "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id.* Under the second prong of the *Strickland* test, the reviewing court must decide whether counsel's performance prejudiced the defendant such that it rendered the proceeding fundamentally unfair or made the result unreliable. *Lockhart v. Fretwell,* — U.S. —, —, 113 S.Ct. 838,

842–44, 122 L.Ed.2d 180 (1993); *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. As to the reference to subsection (A)(i), the government concedes that defense counsel erred.

## I. Presumption of Prejudice Under *United States v. Cronic*

In *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), decided on the same day as *Strickland,* the Supreme Court recognized an exception to the *Strickland* standard for ineffective assistance of counsel for certain circumstances that are so egregiously prejudicial that ineffective assistance of counsel is presumed. The Court stated that, "[t]he presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial." *Id.* at 659, 104 S.Ct. at 2047. "A critical stage is one where potential substantial prejudice to [a] defendant's rights inheres in the particular confrontation and where counsel's abilities can help avoid that prejudice." *United States ex rel. Thomas v. O'Leary,* 856 F.2d 1011, 1014 (7th Cir.1988).

In *Siverson v. O'Leary,* 764 F.2d 1208 (7th Cir.1985), this court recognized that counsel's conduct may be so deficient as to amount to a "constructive absence" during criminal proceedings. *Id.* at 1216–17 (citing *Martin v. Rose,* 744 F.2d 1245, 1251 (6th Cir.1984) (presumption of prejudice where counsel present but refused to participate in defendant's trial); *Javor v. United States,* 724 F.2d 831, 833 (9th Cir.1984) (where defense counsel slept through a substantial portion of the trial, no showing of prejudice is required)); *see also Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067 ("Actual or constructive denial of counsel altogether is legally presumed to result in prejudice."). Nonetheless, cases in which an inherently prejudicial constructive absence of counsel has been found involve particularly egregious conduct that is the functional equivalent of actual absence of counsel.

Hollenback cites *Jenkins v. Coombe,* 821 F.2d 158 (2d Cir.1987), *cert. denied,* 484

U.S. 1008, 108 S.Ct. 704, 98 L.Ed.2d 655 (1988), and *Lofton v. Whitley,* 905 F.2d 885 (5th Cir.1990), as being compelling authority for presuming prejudice in Hollenback's case. In *Jenkins,* the Second Circuit found that prejudice should be presumed because the defendant's appointed counsel had been removed before his appeal was submitted to the appellate court for decision, and no replacement counsel had been assigned. *Jenkins,* 821 F.2d at 161. As Hollenback notes, Jenkins' original appellate counsel filed a five-page brief raising a single three-paragraph argument. After that brief was filed, the attorney successfully moved to be relieved from the assigned representation. Jenkins then proceeded pro se and filed a fifty-one page brief that adopted arguments successfully raised by a co-defendant's counsel. The basis for the Second Circuit's decision to presume prejudice was that "Jenkins ... was constrained to represent himself, despite the clear duty of the state court to afford him adequate and effective representation for his first appeal as of right." *Id.*

In *Lofton v. Whitley,* 905 F.2d 885 (5th Cir.1990), the petitioner's appointed appellate counsel filed a two-page brief that raised no grounds of error and merely requested that the court review for errors patent on the face of the record. The Fifth Circuit found that because the petitioner's appellate counsel asserted no grounds for appeal yet failed to follow the *Anders* procedure for withdrawal from representation, the petitioner was entitled to a writ of habeas corpus. *Id.* at 889–90.

■ Unlike defense counsels' failure to subject the prosecution's case to meaningful adversarial testing in *Jenkins* and *Lofton,* Hollenback's appellate counsel filed a twenty-seven page appellate brief that raised valid sufficiency of the evidence arguments that applied to the subsection (B)(i) and 18 U.S.C. § 371 convictions. Appellate counsel's conduct in this case bears no resemblance to those cases where defense counsel was deemed to be constructively absent, precluding a meaningful adversarial testing. *See United States v. Swanson,* 943 F.2d 1070, 1074 (9th Cir. 1991) (defense counsel's concession in closing argument that no reasonable doubt existed that would preclude conviction is presumed prejudicial); *Harding v. Davis,* 878 F.2d 1341, 1345 (11th Cir.1989) (defense counsel's silence throughout trial and failure to object when the court directed a verdict against the defendant is presumed prejudicial); *Green v. Arn,* 809 F.2d 1257, 1263 (6th Cir.) (absence of counsel during cross-examination of a key government witness by co-defendant's attorney is presumed prejudicial), *vacated on other grounds,* 484 U.S. 806, 108 S.Ct. 52, 98 L.Ed.2d 17 (1987), *reinstated,* 839 F.2d 300 (1988), *cert. denied,* 488 U.S. 1034, 109 S.Ct. 847, 102 L.Ed.2d 979 (1989); *Siverson v. O'Leary,* 764 F.2d 1208, 1217 (7th Cir. 1985) (absence of attorney when the verdict is returned is presumed prejudicial). There is no basis for finding that the brief filed by defense counsel on direct appeal amounted to constructive absence of counsel warranting the presumption of prejudice.[1]

---

**1.** Defense counsel also alleges that the government "capitalized" on defense counsel's erroneous reference to subsection (A)(i) when it responded to the appellant's references to (A)(i) without bringing the error to this court's attention. The government attributes its mistake to oversight by the Assistant United States Attorney who prepared the appellee's brief and argued the appeal.

Hollenback claims that he was bereft of counsel in the same manner and degree as the petitioner in *Penson v. Ohio,* 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). On direct appeal of his conviction, Penson's attorney filed an *Anders* brief and was allowed to withdraw prior to the appellate court's examination of the record. The appellate court examined the record,

and reviewed the merits of Penson's conviction without appointing new counsel. Because Penson was denied counsel on appeal, the Supreme Court held that prejudice should be presumed and that it was inappropriate to apply either the *Strickland* prejudice requirement or harmless error analysis. *Id.* at 88–89, 109 S.Ct. at 353–54. Significantly, the Court observed that "[t]he present case is unlike a case in which counsel fails to press a particular argument on appeal ... or fails to argue an issue as effectively as he or she might". *Id.* at 88, 109 S.Ct. at 354. Unlike Penson, Hollenback was neither actually nor constructively denied counsel. Hollenback essentially argues that his counsel did not press some arguments he believes should have been raised and those that were raised were not ar-

## II. Prejudice Under the *Strickland* Ineffectiveness of Counsel Claim

■ In its response brief filed in the district court and in its appellee's brief, the government concedes that Hollenback's counsel erred in referring to subsection (A)(i) in the appellant's brief. Nonetheless, the district court found, and the government again argues, that this error did not prejudice Hollenback's appeal. The government also argues that the arguments defense counsel ignored on appeal were not clearly stronger than those that he raised. Hollenback asserts that his appellate counsel's reference to subsection (A)(i), rather than subsection (B)(i), caused counsel to raise an invalid issue and neglect to challenge the sufficiency of the evidence needed to find an element unique to a subsection (B)(i) conviction—proof that Hollenback acted with knowledge that the transactions were designed to disguise the nature or source of the proceeds.

Hollenback's contention that the sufficiency of the evidence challenge that was raised on direct appeal was of no significance while the sufficiency of the evidence challenge unique to subsection (B)(i) was "clearly stronger," is without merit. On direct appeal, counsel challenged the sufficiency of the evidence supporting a finding that Hollenback knew that the monies involved in the financial transactions with his co-defendants Danny Brown and Cutkomp were derived from Brown and Cutkomp's marijuana distribution scheme. This argument challenges an element common to a

subsection (A)(i) offense and a subsection (B)(i) offense. Thus, reference to language from subsection (A)(i) did not diminish Hollenback's challenge to his subsection (B)(i) conviction. Appellate counsel's reference to the subsection (A)(i) language was not a part of the "knowledge of proceeds" argument and it did not mislead or confuse this court, which consistently recognized the argument as a challenge to subsection (B)(i). The proof of Hollenback's knowledge of the nature of the proceeds was entirely circumstantial; thus it was not a weak argument to raise on appeal, although this court found that the "elaborate and time-consuming transfers made no sense" if Hollenback was "unaware of the nature of the proceeds." *Brown*, 944 F.2d at 1387.

Hollenback asserts that his appellate counsel's confusion of subsection (A)(i) with subsection (B)(i) caused him to overlook a clearly stronger argument challenging the sufficiency of the evidence proving that the transactions were designed to conceal the nature or source of the illicit proceeds. To obtain a conviction under subsection (B)(i), the government must prove not only that the defendant spent illegally gained funds, but also that the expenditures "were designed to hide the provenance of the funds involved." *United States v. Jackson*, 935 F.2d 832, 841–42 (7th Cir.1991). Hollenback asserts that the evidence at trial was insufficient to support his convictions under (B)(i) because it failed to demonstrate that he made an effort to conceal Brown and Cutkomp's identity in

gued to his satisfaction. The basis for the Court's presumption of prejudice in *Penson* is the same as that set forth in *Cronic*—actual absence of counsel.

Hollenback's claim that the government's identical error of citing subsection (A)(i) in its appellee's brief interfered with his ability to have a fair opportunity to present his defense is incorrect. After this court affirmed the defendant's conviction, Hollenback retained new counsel and filed a timely petition for rehearing of his direct appeal that "called this Court's attention to counsel's error and the government's reticence about it." Appellant's Brief, at p. 5. Furthermore, Hollenback's claim that the government's error caused defense counsel to conduct an inept defense misconstrues the order of the parties' respective errors. The gov-

ernment's error was remarkable, but it was not the *cause* of defense counsel's oversight. In *Siverson v. O'Leary*, 764 F.2d 1208 (7th Cir. 1985), we noted that cases where defense counsel is voluntarily absent from proceedings and ordinary ineffective assistance cases differ markedly from cases where an affirmative act of the prosecutor or court prevents assistance of counsel. *Id.* at 1217. The government's mistake was not an affirmative act that prevented defense counsel from assisting Hollenback. The government's repetition of defense counsel's error also did not prevent this court from catching the parties' error prior to deciding Hollenback's appeal and fully considering Hollenback's petition for rehearing, which cited the parties' mutual mistake.

the two stock transactions involving Brown and in the mortgage transactions involving Cutkomp.

In support of his contention that appellate counsel neglected a clearly stronger argument, Hollenback relies exclusively on *United States v. Sanders,* 929 F.2d 1466 (10th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 143, 116 L.Ed.2d 109 (1991), where the Tenth Circuit reversed the money laundering convictions of a defendant who used the proceeds of a drug transaction to purchase two automobiles. The *Sanders* court held that because the defendant and her husband personally purchased the cars, were readily identified by the salesperson, and conspicuously used both cars, there was insufficient evidence of concealment. *Id.* at 1471–72. The court noted in *Sanders* that Congress intended that the money laundering statute *"include* transactions designed to conceal the identity of the participants to the transactions." *Id.* at 1472 n. 2 (emphasis added). The *Sanders* court found that the transactions were devoid of any attempt to conceal or disguise the source or the nature of the proceeds and stated that application of the money laundering statute to "ordinary commercial transactions" would "turn the money laundering statute into a 'money spending' statute," a result that Congress clearly did not intend. *Id.* at 1471–72.

The statute under which Hollenback and the defendant in *Sanders* were convicted, section 1956(a)(1)(B)(i), provides, in relevant part, that:

> (a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of illegal activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—
>
> \* \* \* \* \* \*
>
> (B) knowing that the transaction is designed in whole or in part—
>
> (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity;
>
> \* \* \* \* \* \*

shall be sentenced to a fine of not more than $500,000 or twice the value of the property derived in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

18 U.S.C. § 1956(a)(1)(B)(i). The plain language of the statute reveals that the subsection (B)(i) element of "concealing or disguising" proceeds can be satisfied not only by a showing that a defendant concealed or disguised the *ownership or control* of ill-gotten gain, but also by proof that the accused concealed or disguised the "nature, . . . location, . . . [or] source" of illegal proceeds. The government's theory at Hollenback's trial was that he concealed or disguised the nature or source of the money used to purchase stock and a mortgage, not that he concealed or disguised the identity of the purchasers.

The Tenth Circuit has recently explained in *United States v. Lovett,* 964 F.2d 1029, 1034 (10th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 169, 121 L.Ed.2d 117 (1992), that its decision in *Sanders* should not be read to require that every money laundering conviction must be supported by evidence of intent to conceal the *identity* of the participants to the transaction. The defendant in *Lovett* had purchased a pickup truck and a house with the partial design of concealing or disguising the nature, location, or source of money he had gained through fraud against his grandmother. The court noted in *Lovett* that,

> [t]o find that the money laundering statute is aimed solely at those transactions designed to conceal the identity of the participants to the transaction is to ignore the broad language of the statute. . . . [T]he money laundering statute is not aimed solely at commercial transactions intended to disguise the relationship of the item purchased with the person providing the proceeds; the statute is aimed broadly at transactions designed in whole or part to conceal or disguise *in any manner* the nature, source, ownership or control of the proceeds of unlawful activity.

*Id.* at 1034 n. 3; *see also United States v. Campbell,* 977 F.2d 854, 858 (4th Cir.1992)

(real estate agent's strong suspicion that client's funds were derived from illegal activity, coupled with irregular under-the-table cash transfer of $60,000 cash down payment on home, sufficient for jury to infer that transaction was designed to conceal nature of proceeds) (reversing district court's post-verdict judgment of acquittal); *United States v. Massac*, 867 F.2d 174, 177–78 (3d Cir.1989) (knowledge that funds were drug-related, combined with irregular nature of financial transactions, sufficient to permit jury to infer defendant's knowledge of the purpose of such transactions).

Hollenback's transactions, by contrast to the family car purchases in *Sanders*, were irregularly structured transactions that were calculated to mislead observers as to the size of the transactions and the actual nature of the funds used. While the transactions are described in detail in *United States v. Brown*, 944 F.2d 1377, 1386–88 (7th Cir.1991), a short summary will illustrate that Hollenback's dealings bore no similarity to the "ordinary commercial transactions" at issue in *Sanders*.

Hollenback arranged for Brown to invest $5,000 in Baton Rouge Mortgage Company ("BRMC") knowing that Brown was a long-standing marijuana dealer whose construction business had fallen on hard times. A short time later, Hollenback contacted Brown and arranged for Brown to invest approximately $20,000 in a second Louisiana mortgage company, River City Mortgage Company ("RCMC"), in increments of less than $10,000, each payment originating from different banks.

Finally Cutkomp, the leader of the marijuana conspiracy, contacted Brown to see if he could assist in getting Cutkomp's mortgage paid off with proceeds from marijuana sales. Brown persuaded Hollenback to assist in the deal, and Hollenback contacted the president of BRMC and requested his assistance in paying off a mortgage for "a friend's mother." Lane Manning, the president of BRMC, testified that prior to Brown's initial investment arranged by Hollenback, Hollenback informed him that Brown was a successful building contractor in an area that was prospering. The Cut-

komp mortgage deal totalled approximately $68,000, which was transferred to BRMC's account in increments of less than $10,000. When the bank receiving the money transfers complained to BRMC that the transfers appeared suspicious, Manning told Hollenback to stop the transfers. Hollenback ignored the request and supplied the final $11,000 needed to meet the total mortgage amount by providing a $6,000 personal check and $5,000 in cash. BRMC then paid the funds to satisfy the mortgage.

Hollenback's claim that he could not be convicted if Cutkomp transmitted the funds rather than Brown because he had no prior knowledge of Cutkomp's method of transfer is not well-taken. The mortgage deal was initiated by Brown, who referred Cutkomp to Hollenback. Lane Manning testified that he believed that the money for the mortgage deal was to originate from Illinois, where the indictment alleged that the conspiracy operated. Manning also testified that he told Hollenback to work out the details of the money transfers with Maria McClaren, a secretary and auditor for BRMC. McClaren testified that the first time she learned of the Cutkomp mortgage deal was when Manning informed her that "there would be some wires coming through from Brian." Contrary to Hollenback's present claim, there was sufficient evidence for a jury to find that Hollenback had prior knowledge that the wire transfers of funds for the Cutkomp mortgage deal were to be carefully structured. In *Brown*, we also noted:

> The evidence clearly showed that all of the transactions in question were carefully engineered to avoid the reporting requirements of $10,000 or more.... Hollenback would have us believe that, even though he had spent many years in the financial industry, he barely noticed the curious form the transfers took.

944 F.2d at 1387. When the IRS later began investigating the suspicious nature of all of the transactions, Hollenback denied that he participated in financial dealings with either Brown or Cutkomp. *Id.* at 1388. Hollenback's claim that he did not have knowledge that the transactions were designed to disguise the nature or source

of the proceeds was discredited by the testimony of Brown, Manning, and McClaren at trial.

In sum, a sufficiency of the evidence argument directed at proof of the subsection (B)(i) element of disguising or concealing the nature or source of the proceeds is not "clearly stronger" than the sufficiency of the evidence argument that was raised on direct appeal concerning Hollenback's knowledge that the funds were derived from criminal activity. Furthermore, counsel's erroneous reference to subsection (A)(i) did not result in a fundamentally unfair proceeding or an unreliable result.

### III. Manning's Testimony Concerning his Wife

■ Another omitted issue that Hollenback claims his counsel should have raised on direct appeal was the admissibility of the testimony of Lane Manning concerning his recollection that his wife had told him that Hollenback and Brown were cousins. In response to the government's query as to what Manning's wife had told him concerning the relationship between Danny Brown and Hollenback, Manning testified, "I had stated I thought she told me that Brian [Hollenback] and Mr. Brown were cousins." Defense counsel objected on hearsay grounds to the government's initial attempt on direct examination to ask Manning about his understanding of the relationship between Hollenback and Brown. During a sidebar, the government stated that it intended to elicit this testimony under Rule 804(b)(3) of the Federal Rules of Evidence, as Hollenback's statement against interest. The government also asserted that Rule 805 of the Federal Rules of Evidence would allow Manning to testify as to his wife's statement because his testimony was not being asserted for the truth of the matter asserted. The court overruled defense counsel's objection and instructed the jury that it was not to consider the testimony for the truth of the matter asserted, but only for the limited purpose of whether Manning's wife actually made the statement to Manning.

Hollenback does not allege that Manning's testimony should have been excluded if Manning's direct testimony had matched the government's sidebar summary of Manning's expected testimony. The government stated at sidebar that Manning would testify that his wife's understanding that Hollenback and Brown were cousins was based on Hollenback's representations. The government planned to use this testimony as circumstantial evidence of Hollenback's attempts to disguise the source of the funds. As Hollenback correctly points out, however, Manning never identified the source of his wife's knowledge during his testimony, thus the testimony could hardly be regarded as Hollenback's statement against interest. During his cross-examination, Manning reiterated that his wife told him that Brown and Hollenback were cousins, and he conceded that that was the extent of her revelation. Hollenback claims that he was prejudiced because Manning's statement on direct examination "allowed the jury to infer that Hollenback and Brown were actually closer than the evidence established."

The only prejudice that could have resulted was if Manning's testimony concerning his wife's beliefs revealed that Hollenback had made misrepresentations as to Brown's identity. The government's failure to question Manning about the source of his wife's belief on direct examination, however, resulted in the admission of testimony simply establishing that Manning's wife held a belief that Brown and Hollenback were cousins. Defense counsel's skillful cross-examination emphasized the negligible impact of Manning's limited testimony on the subject of his wife's understanding. Manning had also testified that Brown was "[a] friend of [Hollenback's] that he had grown up with," and that Hollenback told him that, due to his friendship with Brown, he would personally repay Brown the full amount of his investment in BRMC should the venture fail. Subtle implications of "closeness" between Brown and Hollenback suggested by Manning's testimony concerning his wife's beliefs could not have had more than a slight effect on the jury in light of more emphatic testimony on that

score and the strong circumstantial evidence that Hollenback had concealed the nature of the funds transferred to BRMC. Any error in the admission of the testimony concerning Manning's wife was harmless. *See United States v. Monzon*, 869 F.2d 338, 345 (7th Cir.), *cert. denied*, 490 U.S. 1075, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989).

### IV. Drug Use Testimony

The petitioner also contends that his attorney rendered ineffective assistance by failing to raise on appeal the trial court's admission of evidence of the petitioner's drug use during the pendency of the marijuana distribution conspiracy, a charge on which the petitioner was acquitted. Hollenback does not challenge the admissibility of the evidence of his drug transactions with Brown during the term of the conspiracy, which was properly admitted as part of the crimes charged. *See United States v. Troop*, 890 F.2d 1393, 1402 (7th Cir. 1989).

■ While Hollenback argues on appeal that testimony concerning drug use during the conspiracy[2] should have been excluded as evidence of other crimes that could not satisfy a *Shackleford* Rule 404(b) analysis,[3] defense counsel did not object at trial to the testimony on Rule 404(b) grounds. Rather, counsel objected on two occasions solely on the ground that the government failed to establish that the drug use occurred during the relevant time frame—the existence of the conspiracy. On both occasions the court required the government to establish that the drug use occurred only during the time that the conspiracy existed. Once the government established that the drug use occurred during the conspiracy, defense counsel did not object to the testimony concerning Hollenback's drug use. Because defense counsel

failed to raise Rule 404(b) as a possible bar to the drug use testimony, the objection was waived on appeal unless the admission was plain error. *United States v. Wynn*, 845 F.2d 1439, 1443 (7th Cir.1988). We will find plain error only if the defendant demonstrates that he "probably would have been acquitted but for the erroneously admitted evidence"; in sum, if an " 'actual miscarriage of justice' " thereby resulted. *Id.* (quoting *United States v. Silverstein*, 732 F.2d 1338, 1349 (7th Cir.1984), *cert. denied*, 469 U.S. 111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985)).

■ Defense counsel apparently made a tactical decision at trial to waive any objections to evidence of Hollenback's drug use from 1982 to 1988, believing that this testimony supported Hollenback's claim that he was a recreational drug user who only purchased drugs from Brown for personal and social consumption. When a defendant makes a tactical decision not to object to the admission of evidence at trial, we are particularly reluctant to find plain error. *Id.; see also United States v. Davis*, 838 F.2d 909, 916 (7th Cir.1988) (Rule 404(b) challenge on appeal to drug use testimony "specious at best" where defendant raised the defense that his relationship with co-conspirators was merely that of an ordinary buyer purchasing for personal use). Defense counsel's tactical choice not to object, his adroit closing argument minimizing Hollenback's drug use, combined with the buyer-seller instruction given to the jury lead to his acquittal on Count I, the drug conspiracy count. We find no plain error in the admission of Hollenback's drug use during the conspiracy.

### V. Sufficiency of the Evidence Supporting Hollenback's Conviction for Impeding the IRS

Finally, Hollenback asserts that his counsel on direct appeal did not give effective

---

**2.** Hollenback's counsel did make a Rule 404(b) objection to testimony concerning the petitioner's drug use prior to the beginning of the drug conspiracy in 1982. The trial court sustained the defendant's objection.

**3.** Under *United States v. Shackleford*, 738 F.2d 776 (7th Cir.1984), as modified by *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99

L.Ed.2d 771 (1988), a district court must apply a four-part test to determine whether evidence of acts other than those charged are admissible under Federal Rule of Evidence 404(b). *See United States v. Stevenson*, 942 F.2d 1111, 1117 (7th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 596, 116 L.Ed.2d 620 (1991).

**1282**

assistance in challenging his conviction for impeding the IRS in computing or collecting taxes under 18 U.S.C. § 371. In alleging that there was no evidence that he knew that the transactions had unlawful tax objectives, Hollenback merely reiterates the argument that was made on direct appeal and rejected by this court. *Brown*, 944 F.2d at 1387–88. This court noted in *Brown* that Hollenback lied to an IRS agent about his involvement in or knowledge of any investments involving Brown or any financial transactions concerning Cutkomp. Furthermore, Hollenback persisted in his denials even after the agent confronted him with documents clearly indicating his involvement. The petitioner now presents a lengthier discussion where his counsel on direct appeal simply incorporated earlier arguments in his brief in his final section discussing the sufficiency of the evidence supporting the *Klein* conspiracy conviction.

## CONCLUSION

The district court's judgment is AFFIRMED.