**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 08a0100n.06**
**Filed: February 7, 2008**

**No. 07-1656**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **RENEE INFANTADO,** | ) | A P P E A L   F R O M   T H E |
| | ) | **UNITED STATES DISTRICT** |
| **Plaintiff-Appellant,** | ) | **COURT FOR THE EASTERN** |
| | ) | **DISTRICT OF MICHIGAN** |
| **v.** | ) | |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | **MEMORANDUM** |
| **Commissioner of Social Security,** | ) | **OPINION** |
| | ) | |
| **Defendant-Appellee.** | ) | |

BEFORE:     DAUGHTREY and McKEAGUE, Circuit Judges; GWIN, District Judge.*

**McKEAGUE, Circuit Judge.**  On March 3, 2007, the United States District Court for the

Eastern District of Michigan upheld, as supported by substantial evidence, the decision of the

Commissioner of Social Security denying the application of plaintiff Renee Infantado, for disability

insurance benefits.  Plaintiff now appeals the district court's judgment, contending the court merely

perpetuated errors made by the Commissioner in his evaluation of the record.  For the reasons that

follow, we affirm the judgment of the district court.

**I**

Plaintiff Renee Infantado was born on July 20, 1965.  Since birth she has suffered from a

condition known as congenital adrenal hyperplasia.  This condition results in hormonal imbalances,

*The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

which are treated imperfectly with steroid medications. Failure to maintain proper hormonal balances can result in "adrenal crises," marked by such symptoms as low blood pressure, fatigue and digestive problems. Plaintiff completed her high school education and one year of college studies. She now lives with her husband and teen-aged son in Dearborn Heights, Michigan. She engaged in various forms of unskilled labor until 1994, working in such capacities as a kitchen helper, food service worker, and security monitor. In 1994, she ceased full-time work due to her physical impairments. She attempted to resume part-time work in 1997 as a commercial cleaning worker, but after a few months, the attempt proved unsuccessful.

On September 18, 2001, plaintiff filed an application for disability insurance benefits under the Social Security Act, alleging that she had been disabled since April 1, 1994. It is undisputed that plaintiff last met the insured status requirements of the Act on December 31, 1997. It was therefore incumbent upon plaintiff to demonstrate that she became disabled from performing substantial gainful activity due to a physical or mental impairment prior to December 31, 1997. Plaintiff's application was based on the claim of disability due to chronic adrenal hyperplasia, fibromyalgia, and irritable bowel syndrome. On administrative review, plaintiff's application was denied by an administrative law judge ("ALJ").

The ALJ had conducted a hearing on February 12, 2004. In the hearing, plaintiff testified that fibromyalgia caused her to experience fatigue as well as joint and muscle pain and weakness. Due to the adrenal hyperplasia, however, she was unable to tolerate the medication prescribed to address the fibromyalgia. She also testified that irritable bowel syndrome had become a problem in 1997,

causing her to have bouts of diarrhea for one to two days at a time every two to three months. Plaintiff complained of anxiety and depression, ostensibly secondary to emotional trauma experienced as a child when she had to undergo sex reassignment surgery to correct ambiguous genitalia (caused by the congenital adrenal hyperplasia). Being around people, she testified, causes her to be anxious and confused. She takes Xanax for the anxiety and has received psychiatric treatment. Plaintiff testified that when she experiences an adrenal crisis, which occurs every two to three months and may last for as long as two weeks, she suffers from severe vomiting and diarrhea, dizziness, and lethargy. Further, plaintiff testified that the steroid medications she takes adversely affect her immune system and render her more susceptible to infections. Plaintiff testified that she can walk for 20 to 30 minutes at a time and can drive short distances, but that her daily activities have been curtailed due to her impairments.

The ALJ also received testimony from medical expert Emily Giesel, M.D., who had reviewed plaintiff's medical records, and vocational expert Richard Szydlowski. In a decision issued on June 23, 2004, the ALJ concluded that although plaintiff was unable to perform her past relevant work, she retained the residual functional capacity to perform unskilled sedentary work. He therefore concluded that plaintiff was not under a disability prior to December 31, 1997. The Appeals Council denied plaintiff's petition for review on April 1, 2005, rendering the ALJ's decision the Commissioner's final decision.

Plaintiff then commenced this action for judicial review of the Commissioner's decision under 42 U.S.C. § 405(g). The United States Magistrate Judge reviewed cross-motions for summary judgment and issued a report and recommendation recommending that the Commissioner's decision

be upheld. After overruling plaintiff's objections, the district court adopted the report and recommendation and on March 30, 2007, issued its judgment upholding the Commissioner's decision. Plaintiff timely appealed. She attacks the Commissioner's decision based on three assignments of error, contending (1) that the ALJ's reasons for rejecting the opinion of her treating physician are not supported by substantial evidence; (2) that the ALJ erred by discounting plaintiff's subjective complaints as not fully credible; and (3) that the Commissioner failed to sustain his burden of establishing the availability of work within plaintiff's residual functional capacity.

**II**

**A. Standard of Review**

We do not have the prerogative to consider the factual merits of plaintiff's application *de novo*, or to resolve conflicts in evidence, or to decide questions of credibility. *Walters v. Comm'r of Social Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Rather, appellate review is limited to determining whether the district court erred in finding that the Commissioner's decision is supported by substantial evidence. *Id*. "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Social Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether substantial evidence supports the Commissioner's decision, we review the administrative record as a whole, but we may not reverse the Commissioner's decision merely because we disagree or even because there exists substantial evidence that supports a different

conclusion. *Id.*; *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). If the decision finds the support of substantial evidence in the record, we must affirm.

### B. Rejection of Dr. Colton's Opinion

Kenneth Colton, D.O., became plaintiff's primary treating physician in September 2000 and continued to treat her until January 2004. During this period, he treated her on a regular basis for a variety of complaints. In July 2003, Dr. Colton responded to a questionnaire from plaintiff's counsel, rendering a diagnosis of adrenal hyperplasia, depression/anxiety disorder, and irritable bowel syndrome. Questionnaire, AR 324. It was his opinion that plaintiff could not then perform even sedentary work on a sustained basis (although she could perhaps on a part-time basis). *Id.*, AR 326. Dr. Colton stated that this level of impairment had existed since his first examination of plaintiff in September 2000 and "most likely would date back prior to this time, i.e., mid 1990's at least, since condition—congenital adrenal hyperplasia—present since birth." *Id.*, AR 327. He expected the impairment to last indefinitely—on an intermittent basis. *Id.*

Plaintiff contends that the opinion of Dr. Colton, as her treating physician, that she was totally disabled in the mid-1990s, was entitled to substantial or even complete deference and that the ALJ improperly discounted it. The ALJ noted that Dr. Colton, who did not begin treating plaintiff until September 2000, "did not have a foundation for the opinion insofar as the material period is concerned," i.e., prior to December 31, 1997. Decision pp. 3-4, AR 21-22. Moreover, the ALJ explained that Dr. Colton's opinion was not only inconsistent with the opinions of the state agency medical consultants and the medical expert, Dr. Giesel, but was also inconsistent with the opinion of Juan A. Estigarribia, M.D., who had been plaintiff's long-term treating physician during the

relevant period. *Id*. The ALJ concluded that "Dr. Colton's opinion is anomalous, without foundation, and not entitled to any weight." *Id*. at 22.

The district court considered plaintiff's objection and concluded that the ALJ "permissibly relied on these records as a basis for discounting the apparently inconsistent opinion reached by Dr. Colton roughly two-and-a-half years after the period at issue here." Opinion and Order p. 4. In doing so, the district court adopted the following reasoning from the magistrate judge's report and recommendation:

> Dr. Estigarriba [sic], the physician treating Plaintiff in 1996 and 1997, noted [in December 1996] that Plaintiff could return to work "without counterindication." On the basis of examinations made after 1997, Dr. Colton concluded that Plaintiff could not work at all. Dr. Estigarriba's opinion directly contradicts Dr. Colton's opinion. As Dr. Estigarriba was also a treating physician, the ALJ was free to prefer his opinion of [sic] Dr. Colton's. The fact that Dr. Estigarriba's opinion was rendered contemporaneously, rather than years after the fact, was good reason for the ALJ to give that opinion greater weight than Dr. Colton's opinion. Portions of Dr. Colton's opinion are without support in the medical record. He opined that Plaintiff can only sit for two hours and stand or walk for up to three hours in an eight-hour period, could not use her hands or legs repetitively for any purpose whatsoever. As the medical experts pointed out during the administrative hearing, these impairments are not suggested by any of the objective medical evidence on the record.

Report and recommendation pp. 9-10.

Plaintiff nonetheless insists that the ALJ did not adequately explain his reasons for failing to give Dr. Colton's opinion controlling or at least significant weight in accordance with the governing regulation, 20 C.F.R. § 404.1527(d)(2), and governing case law, *Rogers*, 486 F.3d at 242,

and *Wilson v. Comm'r of Social Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The governing requirements alluded to are summarized in *Wilson* as follows:

> An ALJ must give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.*, 378 F.3d at 544. Further, *Wilson* observes that the regulation also requires the ALJ to "give good reasons" for the weight given to a treating physician's opinion. *Id.*; *see also Rogers*, 486 F.3d at 242 (accord).

Plaintiff contends the ALJ did not, contrary to these authorities, explicitly couch his rejection of Dr. Colton's opinion in terms of the regulation factors. She contends the decision must therefore be reversed, per *Rogers*.

We note that the ALJ did not reject or accord no weight to Dr. Colton's diagnosis and functional capacity opinions during the time period that he treated plaintiff, a period not relevant to plaintiff's claim for benefits. Rather, he found that Dr. Colton's "opinion," in relation to the revelant time period, that plaintiff's impairments "most likely" became disabling in the mid-1990s, was without foundation, as Dr. Colton had not begun treating plaintiff until September 2000, more than 2½ years after the relevant period. Dr. Colton's "most likely" opinion was not based on his review of plaintiff's past medical records. Rather, he appears to have simply surmised that because plaintiff

had suffered from congenital adrenal hyperplasia (the condition from which her impairments stemmed) since birth, her impairments most likely pre-existed her course of treatment with him. The ALJ thus correctly observed that *this* "opinion" was without foundation; that is, in the terms of the regulation, was not "well-supported by medically accepted clinical and laboratory diagnostic techniques."

Moreover, the ALJ also noted that Dr. Colton's supposition about the level of plaintiff's impairment in the mid-1990s was "anomalous" and "inconsistent with the remainder of the medical opinions of record." Indeed, the ALJ noted that Dr. Colton's belief in this regard was contradicted in the record by the more relevant December 1996 opinion of Dr. Estigarribia, a specialist who treated plaintiff for an even longer period than did Dr. Colton and who affirmatively recommended that plaintiff return to work; and by the opinion of Dr. Giesel, whose assessment of plaintiff's level of impairment, unlike Dr. Colton's, was based on review of plaintiff's entire medical records.

In other words, without explicitly citing 20 C.F.R. § 404.1527(d)(2), the ALJ did in fact rely on regulation factors in discounting Dr. Colton's opinion. The ALJ's decision "gives good reasons" for his rejection of Dr. Colton's opinion regarding plaintiff's functional capacity prior to December 31, 1997. The ALJ's decision is thus distinguishable from the one presented in *Rogers*, where the ALJ was held not to have adequately explained what weight was given to a long-term treating physician's opinions by stating simply that "the record does not support the limitations of the severity suggested by [the treating physician]." 486 F.3d at 246. Here, the ALJ's failure to *explicitly* cite the regulation factors is no impediment to meaningful review and is therefore no grounds for reversal.

Plaintiff insists that, even if Dr. Colton's opinion was properly denied "controlling weight," the ALJ's decision to give it no weight at all was not supported by substantial evidence. She argues that Dr. Estigarribia's December 1996 recommendation that she return to work was not entitled to controlling weight, as it turned out to be ill-founded when her attempt to work was ultimately unsuccessful. Further, she contends that many of the symptoms she experienced throughout 1997, as documented in the records of Dr. Estigarribia, were consistent with or indicative of the intermittent adrenal crises deemed by Dr. Colton to be totally disabling in 2003. Finally, she contends that the fact that Dr. Colton's opinion regarding her level of impairment in 1997 was retrospective is no reason, standing alone, to give it no weight at all.

As to the first of these objections, the record does not disclose, apart from plaintiff's testimony that she "wasn't able to handle it," why plaintiff's return to work in 1997 was unsuccessful.[1] With the exception of Dr. Colton's suspect retrospective opinion, the record is simply devoid of any medical opinion evidence to support a finding that plaintiff was unable to work prior

---

[1]Plaintiff argues that the ALJ made a "finding" that her 1997 return to work was unsuccessful due to her impairments and that this finding supports her disability claim. The ALJ did not make such a "finding." The statement alluded to appears not in the ALJ's "Findings," but in the "Rationale" section of his opinion. Decision p. 2, AR 20. It represents nothing more than a summary or characterization of plaintiff's hearing testimony to the effect that "she wasn't able to handle it." Hrg. tr. p. 12, AR 637. The notion that the ALJ's statement should be construed as supporting a finding that she was under a disability in 1997 is directly contradicted by the ALJ's Finding No. 11: "The claimant remained capable of performing jobs that exist in significant numbers in the national economy on and before the date on which the claimant last met the disability insured status requirements of the Act, December 31, 1997." Decision p. 8, AR 26.

to December 31, 1997.[2]  Second, notwithstanding Dr. Estigarribia's ongoing and frequent treatment of plaintiff throughout 1997, he did not render an opinion during that time to the effect that she was unable to work.  Nor did any other physician.  Third, the ALJ did not reject Dr. Colton's opinion concerning plaintiff's level of impairment in 1997 just because it was retrospective.  This is an unfair characterization of the ALJ's reasoning, as set forth above.

## C.  Discounting Plaintiff's Subjective Complaints

To the extent the ALJ discounted plaintiff's subjective complaints and gave greater weight to the opinions of Dr. Estigarribia, Dr. Giesel, and other medical consultants concerning the functional limitations caused by symptoms stemming from her chronic adrenal hyperplasia condition, plaintiff contends the ALJ did not properly evaluate her credibility with reference to the factors set forth at 20 C.F.R. § 440.1529.

In evaluating complaints of pain, an ALJ may properly consider the claimant's credibility. *Walters*, 127 F.3d at 531. The ALJ's assessment of credibility is entitled to great weight and deference, since he had the opportunity to observe the witness's demeanor. *Id*.  The assessment of

---

[2]After the administrative hearing, plaintiff tried to supplement the record by including a clarifying note from Dr. Estigarribia, dated February 11, 2005, stating:  "In 1996, I wrote a note okaying an attempt to try a part-time job that failed because she [Renee Infantado] could not then and cannot now work."  Note, AR 611.  The district court held the clarifying note did not warrant remand for reassessment of the record, a ruling plaintiff has not directly challenged on appeal. Indeed, our review of the Commissioner's decision is limited to the record made before the ALJ. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  There being no showing of cause for plaintiff's failure to timely obtain and present the clarification at the time of the hearing, remand is not warranted and the note is not considered to be part of the record on review.  *Bass*, 499 F.3d at 513; *Foster*, 279 F.3d at 357.

a claimant's assertions of disabling pain is made in light of factors set forth in 20 C.F.R. § 440.1529,

summarized in a two-part test:

> First, we examine whether there is objective medical evidence of an underlying
> medical condition. If there is, we then examine: (1) whether objective medical
> evidence confirms the severity of the alleged pain arising from the condition; or (2)
> whether the objectively established condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

*Id*. (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994)). "Whenever a claimant's

complaints regarding symptoms, or their intensity and persistence, are not supported by objective

medical evidence, the ALJ must make a determination of the credibility of the claimant in connection

with his or her complaints 'based on a consideration of the entire case record.'" *Rogers*, 486 F.3d

at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996)). Further, again, the

ALJ is required to explain his credibility determination. *Id*. at 248.

The ALJ's assessment of plaintiff's credibility is explained with reference to 20 C.F.R. §

440.1529. Decision p. 6, AR 24. The ALJ recognized that there was "no question that the claimant

has been severely compromised by her impairments, perhaps especially congenital adrenal

hyperplasia." Yet, based on review of the record as a whole, he found that although plaintiff testified

in the February 2004 hearing that she was then unable to work because of her periodic adrenal crises,

the weight of the evidence—including the contemporaneous treatment notes and opinion of her long-

term treating physician, Dr. Estigarribia, and the opinion of Dr. Giesel, based on comprehensive

review of all the medical evidence—did not support her alleged complaints to the extent asserted

during the material period, i.e., some six years earlier. Rather, he found that the record as a whole

supported the finding that she retained the functional capacity to perform sedentary work during the material period.

Dr. Estigarribia's treatment notes indicate that plaintiff received care from him on eleven separate occasions in the last seven months of 1997. They further indicate that some of the symptoms reported may have been secondary to her congenital adrenal hyperplasia (e.g., stomach upset, nausea, esophagitis and dizziness) and resulted in referrals for further examination (i.e., duodenoscopy (normal), EEG (normal), and CT brain scan (normal)). Other symptoms appear to have been unrelated (e.g., sore throat, cough, sinus trouble and shoulder pain due to car accident). Yet, even upon viewing them in combination, the various symptoms reported in the material period are not suggestive of the sort of severe, allegedly disabling "adrenal crises" that plaintiff now contends intermittently afflict her and render her disabled from full-time work.

Hence, to the extent plaintiff's testimony may be construed as alleging that the symptoms she experienced in 1997 were disabling, her complaints are not clearly corroborated even by the notes of her own treating physician. Our review of the record thus confirms the ALJ's conclusion, in Finding No. 4, that "the evidence on the record as a whole does not support the claimant's subjective complaints to the extent alleged." Decision p. 7, AR 25. We therefore conclude that the ALJ's assessment of plaintiff's credibility is supported by substantial evidence on the whole record and is adequately explained with reference to the record.

### D. Available Work within Plaintiff's Residual Functional Capacity

Plaintiff contends that the ALJ erred in determining that the Commissioner carried his burden of establishing the availability of work within the limitations of her impairments, considering her

age, education and work experience. The ALJ relied on the opinion testimony of vocational expert

Richard Szydlowski in response to hypothetical questions asked by the ALJ. Citing *Howard v.*

*Comm'r of Social Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), plaintiff contends that because the

hypothetical questions did not incorporate all of her limitations based on the medical evidence, they

did not accurately portray her residual functional capacity. As a consequence, she argues, the

vocational expert's testimony on available work is undermined and the ALJ's determination of her

residual functional capacity is not supported by substantial evidence. Indeed, although a hypothetical

question need not incorporate a listing of the claimant's medical conditions, the vocational expert's

testimony, to be reliable, must take into account the claimant's functional limitations, i.e., what he

or she "can and cannot do." *Webb v. Comm'r of Social Sec.*, 368 F.3d 629, 632-33 (6th Cir. 2004)

(clarifying *Howard*).

Specifically, plaintiff contends first that the ALJ's hypothetical questions did not include the

limitations found by Dr. Colton, who concluded she was unable to perform any kind of full-time

work. It is well established that the hypothetical questions need only incorporate, however, those

limitations which the ALJ has accepted as credible. *Casey v. Sec'y of Health & Human Servs.*, 987

F.2d 1230, 1235 (6th Cir. 1993); *Griffeth v. Comm'r of Social Sec.*, 217 F. App'x 425, 429 (6th Cir.

2007). For the reasons outlined above, the ALJ's decision to give no weight to Dr. Colton's opinion

regarding plaintiff's limitations in 1997 has been found to be supported by substantial evidence. The

ALJ's failure to incorporate Dr. Colton's limitations into the hypothetical questions was therefore

not in error.

Plaintiff also contends the ALJ failed to incorporate her substantiated mental limitations. She points to the February 20, 2002 mental residual functional capacity assessment of psychiatrist Zalna Yousuf, M.D., who noted "moderate," but not "marked," limitations in plaintiff's ability to understand, remember and carry out detailed instructions; in her ability to maintain attention and concentration for extended periods; and in her ability to set realistic goals and make plans independently of others. Mental RFC Assessment pp. 1-2, AR 303-04. Yet, despite these limitations, Dr. Yousuf noted that plaintiff "does [light] household chores, is involved with her child's activities, e.g., builds models, is interested in gardening, fishing." *Id*. p. 3, AR 305. Dr. Yousuf concluded that plaintiff "appears to be capable of performing simple tasks on a sustained basis." *Id*.[3]

The ALJ was not oblivious to the mental RFC assessment report, but expressly noted Dr. Yousuf's limitations in his decision. Decision pp. 4-5, AR 22-23. The hypothetical questions he asked of the vocational expert could have been more complete, but we do not find that they inaccurately portrayed plaintiff's substantiated limitations. Further, the conclusion drawn by the ALJ from the vocational expert's answers, i.e., that plaintiff retained the ability to perform unskilled sedentary work, is not inconsistent with Dr. Yousuf's opinion regarding plaintiff's functional limitations and is supported by substantial evidence.

---

[3]Dr. Yousuf did not purport to state an opinion regarding plaintiff's mental functional capacity in 1997, but provided a "current evaluation," i.e., as of February 2002. *Id*. at p. 1, AR 303.

Accordingly, plaintiff's objection to the ALJ's residual functional capacity assessment is also overruled.

### III

For the foregoing reasons, we deny all of plaintiff's assignments of error. Plaintiff has failed to demonstrate that the district court erred in its determination that the Commissioner's decision, denying plaintiff's application for disability insurance benefits, is supported by substantial evidence. The judgment of the district court is therefore **AFFIRMED**.